FREDERICK H. MILLS & another *vs.* FREDERICK E. POTTER & others.

Suffolk.     March 31, 1905. — October 17, 1905.

Present: KNOWLTON, C. J., MORTON, LATHROP, & BRALEY, JJ.

*Corporation,* Reorganization.    *Trust.*    *Agency.*

In a suit in equity by the members of a committee representing bondholders of a corporation, who under authority of an agreement of the bondholders had foreclosed a mortgage, purchased the property at the foreclosure sale and conveyed

it to a new corporation formed for the purpose, for an allowance of their accounts for moneys paid, expenses incurred and services rendered, it was found by a master that the plaintiffs had acted in good faith and in the exercise of a sound discretion for the interest of the defendants, and that their efforts had been beneficial to the bondholders. A purchaser of one of the bonds after the foreclosure filed exceptions to the master's report which were overruled by a justice of this court. The justice made a decree founded on the report, and the single bondholder appealed, the other bondholders being satisfied and a majority of them having asked that the decree be affirmed. It was *held,* that under the circumstances of the case all of the acts of the plaintiffs complained of by the appellant were authorized by the agreement of the bondholders, the material portions of which are quoted in the opinion.

The circumstances may be such as to make proper the allowance of a payment by a committee of the bondholders of an insolvent corporation of a commission, for a sale of new bonds, to a firm one of the members of which is a member of the committee.

KNOWLTON, C. J. The plaintiffs are a committee representing bondholders of the Adrian Water Works Company, whose bonds were secured by a mortgage upon the property of the corporation. The mortgage has been foreclosed, and a new corporation has been organized under the name of the Adrian Water Company, to which the property of the former corporation, which was bought in by the plaintiffs at the foreclosure sale, has been conveyed. This suit in equity is brought to obtain an allowance of the accounts of the plaintiffs for moneys paid, expenses incurred, and services rendered in the performance of their duties as trustees, and an order directing the distribution of the stock of the new corporation, and a discharge from their trust.

The case was referred to a master, who found for the plaintiffs upon all material points. No exceptions were taken to his report, nor any objection made to the decree which is founded upon it, except by one of the defendants, who, since the foreclosure, has succeeded to the title of the holder of one of the bonds. The bonds were all of the denomination of one thousand dollars, and they were two hundred in number, making the mortgage indebtedness $200,000. One hundred and sixty-eight of these bonds were deposited under the agreement with the plaintiffs, to be held and represented by them for the benefit of the owners. The defendant Francis, who afterwards became the owner of one of these bonds, filed numerous exceptions to the master's report, and appealed from the final decree which

overruled these exceptions. So far as appears, all the other bondholders are satisfied with the report, and with the decree of the single justice founded upon it. A majority of them have appeared before us by counsel, and have asked that the decree be affirmed, alleging that the exceptions taken by the appellant are frivolous, and evidently intended for delay, and that delay will be injurious to the rights and interests of everybody else affected by the litigation. Under these circumstances, the decree should not be reversed unless it plainly appears to be in violation of the legal rights of the appellant.

It would serve no useful purpose to consider in detail the thirty-four exceptions of the appellant to the master's report. The general objections to the conduct of the plaintiffs, as trustees, may be considered briefly.

At the time of the sale under the mortgage, an appeal from the decree of the Circuit Court of the United States, which ordered the foreclosure, was pending before the Circuit Court of Appeals, and after the final decision of that court, the case was taken to the Supreme Court of the United States, and was pending there until February 27, 1899. The decree of foreclosure was entered by the circuit court on July 20, 1897, and the sale was made later in the same year. The plaintiffs, who purchased the plant for the bondholders, conveyed it to the Adrian Water Company, the new corporation organized in the interest of the bondholders, on January 8, 1898. At this time there was a contract between the former corporation and the city of Adrian, which the corporation had failed to perform for want of an adequate water supply and for other reasons, and the new corporation was not in a position to perform or enforce the contract, or to avail itself of it in any profitable way, without entering into new negotiations, and materially changing its terms. The efforts of the former corporation, the Adrian Water Works Company, and of its predecessor, the Adrian-Michigan Water Works Company, which previously had been wound up, showed that it was impracticable to continue business successfully without obtaining a new and independent water supply.

The master has found, in substance, that the plaintiffs have acted in good faith and in the exercise of a sound discretion, for the interest of the defendants, and that their efforts have been ·

beneficial to the bondholders. The most important objections of the defendant Francis to their management of the trust are that they did not immediately distribute the stock of the new company among the bondholders, and that they caused the directors of the new corporation to make a new contract with the city of Adrian, and to obtain a new water supply, and to issue bonds to the amount of $50,000 at one time, and $10,000 at another time, to pay expenses, each issue being secured by a mortgage upon the property of the corporation. Under the findings of the master, it is not contended that this was not beneficial to the bondholders; but it is contended that it was unauthorized, and in violation of their trust.

It is true, as contended by the defendant Francis, that the original authority of the plaintiffs is found in the bondholders' agreement, and that such an agreement should be construed strictly; but there is much in the situation of the parties, and of their property, that is peculiar. Plainly it was expected that the plaintiffs would organize a corporation if they thought it expedient so to do, and that this would involve the election of officers, with authority to manage the affairs of the corporation. The bondholders' agreement contained, among others, the following provisions:

" Six. The committee is empowered to take any action under said agreement or otherwise, which the bondholders might have taken, and to make such use or disposal of the deposited securities, and do such things hereunder, as it may deem necessary or advisable. The committee may, for any purpose of this agreement, borrow money and pledge for the repayment thereof, or for any purpose hereof, any or all of the deposited securities, and shall have a lien thereon and on any other assets coming into its hands, for the compensation and the expenses and liabilities incurred by the committee hereunder. . . .

" Seven. The committee, in its discretion, may purchase at the foreclosure sale the property covered by the mortgage, for any price not exceeding the principal and interest then accrued and unpaid on all the bonds secured by the mortgage, and any cash payment required to be made for the property to cover the expenses of the trustee and its counsel, legal and other expenses of the court; and for the purpose of making any such cash pay-

ment required at any foreclosure sale, the committee may assess the certificate holders ratably, and have a lien upon the certificate holders ratably, and have a lien upon the interest represented by the certificates, for any unpaid assessments, or may borrow money for any such purpose or for the purpose of otherwise carrying out the provisions of this instrument, and may pledge for the repayment of any moneys so borrowed, any of the bonds and coupons deposited hereunder, or any other assets in the hands of the committee. In case any certificate holder shall fail to pay any assessment provided for in this paragraph, the said committee may sell out the deposited bonds and coupons at such time or place as it may deem advisable, giving ten days' notice thereof."

"Nine. The committee shall, after the payment of the expenses of foreclosure and all expenses incurred by the committee and its compensation, allot to the certificate holders their proportionate interests in the securities of any new company which may be organized by the committee to take over the property acquired at the foreclosure sale, in case of purchase.

"Ten. The committee shall, prior to the conveyance of any purchased property to the new company, submit to the certificate holders a detailed plan of reorganization, which shall be binding upon all of said holders, unless the holders of the majority in interest of the outstanding certificates shall within thirty days file with the Trust Company their written dissent from said plan. It is understood and agreed that, should the new corporation be formed, it shall be within the power of the committee to give to the city of Adrian such portion of the stock of such new company as may be agreed upon by the committee and the city authorities; but such disposition of the stock, or any portion thereof, in such new company, is wholly within the discretion of said committee."

"Twelve. The committee may supply any defects or omissions in this plan, which it shall deem necessary to be supplied to enable the committee to carry out the general provisions of the plan, and with the consent of a majority in interest of the outstanding certificates, may take any action other than as provided for in this plan, which the committee shall unanimously determine to be for the benefit ratably of all the certificate hold-

ers, and thereupon all the certificate holders shall be bound by such action."

In the plan of reorganization, which was submitted to the bondholders in pursuance of this agreement, is a statement that the committee finds it necessary immediately to raise the sum of $20,000, and that it may be necessary to raise the further sum of $20,000 "for expenses of foreclosure and sale, and for needed improvements to the property, to such extent as may be necessary." It then provides for an assessment upon the bondholders to raise these sums. There is another sentence that refers to the fact that money "may be needed for improvements to the plant." This plan also contains these statements: "It is difficult at this time to submit a further and more detailed proposition than is given above, for the reason that until the committee obtain possession of the property it cannot be told with certainty what is the best disposition to be made of it. Under some circumstances it may be best to dispose of it to the city of Adrian."

"Six. The committee reserves the right given it in the agreement above mentioned, to borrow such sums of money as it finds necessary, and pledge therefor the securities in its hands."

A circular accompanying this plan was sent to each bondholder, in which the plaintiffs say: "It is difficult to tell exactly what securities we can place upon the property and we think it is only necessary for us to say at this time that bondholders contributing their assessments will be given a prior lien for the money contributed, if the ownership of the property continues in the hands of the committee or the associated bondholders"; also, "it is well known by all persons interested in the property, that certain improvements in the water supply are needed at Adrian," etc.; also, "if the committee become the purchasers of the property and continue to own it, or to own the stock in the corporation, organized for that purpose, it will be necessary to expend some money, which is as yet indeterminate, in the improvement of the water supply."

This plan of reorganization, which was authorized by the original agreement, and which became binding upon bondholders, at least after their acceptance of it by the payment of the first subscription called for under it, plainly contemplated the

holding of the property by the plaintiffs for a reasonable time, and the expenditure of money for improvements. Moreover, the validity of the foreclosure and the title of the corporation were in litigation for nearly a year and a half after the foreclosure. That money for these improvements might be raised by the plaintiffs, if necessary, by giving security upon the property in their hands, was expected. That the plaintiffs might hold the stock of the new corporation for the benefit of the bondholders, for a reasonable time after its organization, with a view to the promotion of their common interests, was also contemplated. We see nothing in the action of the plaintiffs in reference to the new contract of the corporation with the city of Adrian, or the procurement of a new water supply and the issue of securities to pay for it, which constitutes a breach of trust. Something of this kind seems to have been necessary in order to accomplish the general purpose of the bondholders in their reorganization. The committee was authorized by the original contract, not only to supply defects or omissions in the plan to carry out its general provisions, but, with the consent of a majority in interest, to take any action which they should unanimously determine to be for the benefit ratably of all the certificate holders. The failure to provide for continued litigation involving the title for a long time after the foreclosure, while important action for improvement of the plant was imperatively necessary, might well be deemed a defect or omission in the plan; or, if the action of the plaintiffs was " other than as provided for in this plan," the consent of the majority in interest of the holders of the outstanding certificates, in connection with the payment of both assessments upon one hundred and sixty-four of the bonds, and with the other facts that appear in the case, might well be inferred. In the circular sent to the several bondholders in connection with the call for the second assessment, was this statement: " Until the actual cash cost of the improvements is ascertained, and the expenses of the committee have been fixed, it is impossible to determine exactly the amount of securities which will be issued on the plant, and as stated before, the cost of improvements will exceed the amount now called in." The payment of the second assessment was made after this, and it indicated consent to the issue of securities by the plaintiffs.

Our conclusion as to the conduct of the plaintiffs in these important particulars goes far towards settling all the other questions in the case. We have no doubt of the right of the plaintiffs to make the assessments that they made. What we have said sufficiently disposes of exceptions one, two, and nine, also of exceptions four, five, six, seven and eight.

It is contended that the raising of money by mortgage was such a violation of the agreement to give bondholders a lien for the assessments paid as should deprive the plaintiffs of all rights. But the stipulation about liens was indefinite, with expressions of doubt as to how it could be carried out. We are of opinion that it was so far modified by the other provisions of the arrangement, that the making of the mortgages cannot be treated as a breach of trust which deprives the plaintiffs of their right to have compensation, and to be reimbursed for their expenses.

Under the peculiar circumstances of this case, the fact that one of the plaintiffs was a member of a firm to which commissions were paid for the sale of the bonds, does not affect the right of the plaintiffs to have these payments allowed. *Turnbull* v. *Pomeroy*, 140 Mass. 117.

The failure of the master to compel the witness Jordan to answer the hypothetical question put by the defendant Francis was not an error. As the question was framed, and in view of the statement of the witness, it was in the discretion of the master to leave it unanswered.*

*Decree affirmed.*

*A. M. Lyman,* (*L. D. Jennings* with him,) for the defendant Francis.

*C. F. Choate, Jr., J. L. Hall & R. A. Stewart,* for certain defendants, submitted a brief.

*R. Homans,* for the plaintiffs.

---

* The witness was the president of a trust company. The question related to what would be a reasonable compensation for foreclosing, and the witness stated that he could not answer the question so far as legal services were concerned. The master refused to compel the witness to answer on the ground that there was not enough before the witness to enable him to answer the question.