JAMESTOWN PORTLAND CEMENT CORPORATION & others *vs.*
FRANCIS T. BOWLES & others.

JOHN F. BRAUN *vs.* SAME.

Suffolk.    March 26, 1917. — September 13, 1917.

Present: RUGG, C. J., BRALEY, DE COURCY, & CROSBY, JJ.

*Contract,* What constitutes. *Equity Jurisdiction,* To compel specific performance of contract.

The signing of an agreement in writing to subscribe for the shares of a proposed Massachusetts corporation, which refers to a prospectus, in which it is stated that counsel advise that a new corporation be formed to take over the property of a certain Virginia corporation and there follows an outline of the proposed capitalization of the new Massachusetts corporation and a statement of the terms on which stockholders in the Virginia corporation may exchange their shares for shares in the new Massachusetts corporation, does not create a contract of the subscribers with the Virginia corporation or with any of its stockholders.

Negotiations, proposals or schemes, which do not possess the essential elements of a completed contract, cannot be enforced in equity by a bill for specific performance. Nothing short of a completed contract can be made the foundation of such a bill.

TWO BILLS IN EQUITY, filed in the Supreme Judicial Court on June 22, 1915, and November 2, 1915, the first by the Jamestown Portland Cement Corporation, a corporation organized under the laws of the State of Virginia and by four individuals, alleged to be a "stockholders' committee" of that corporation, and the second by the first named member of such stockholders' committee, to enforce the specific performance of an alleged contract of the defendants to take and pay for the shares of a Massachusetts corporation called the Yorktown Cement Corporation and thereafter to carry out a reorganization plan for the purchase of the property of the plaintiff corporation.

The subscription agreement alleged to have been signed by the defendants was as follows:

"Yorktown Cement Corporation
Subscription Agreement.

"We, the undersigned, hereby severally agree each with the other, in consideration of the mutual agreements herein contained to take the number of shares of preferred and common stock re-

spectively of the Yorktown Cement Corporation (a proposed Massachusetts corporation) hereinafter set opposite our respective names and to pay for the same to, and upon demand of George Linder, who will act as temporary treasurer, the sum of $90.00 for each such share of preferred stock (par $100.00) and the sum of $5.00 for each such share of common stock (par $5.00). The said stock is to be a part of the issue referred to in a certain prospectus dated October 15, 1911, and signed by Francis T. Bowles, and is to be issued substantially upon the conditions therein specified, with the additional condition, however, that the preferred stock is to be subject to purchase or redemption on or after January 1st, 1917, at the price of $110.00 per $100.00 share.

"The subscriptions hereto shall be binding only when subscriptions to said stock shall have been obtained amounting in the aggregate to the sum of $950,000.00.

| Name of Subscriber. | Number of Shares Preferred. | Number of Shares Common. | Total Cash Subscription." |
|---|---|---|---|

The portion of the prospectus signed by Francis T. Bowles referred to above was as follows:

"New Company
Yorktown Cement Corporation.

"Counsel advise as the best method that a new corporation be formed to take over the property of the present corporation and receive the new money.

"Those named below have agreed to become Directors of the new Company:

"The new corporation will be organized under the laws of Massachusetts, will be named the Yorktown Cement Corporation, and will provide for a capital stock of $2,100,000.00; $2,000,000 — 7 per cent. cumulative stock, par value of $100.00 per share, 20,000 shares of common stock, par value of $5.00. Each stockholder in the old company will receive for one share of preferred with its accumulated dividends one share of the new preferred; for each two shares of founders stock which they hold they will be permitted to subscribe for one share of the new common in cash at $5.00. It is proposed to raise $950,000.00 cash by the sale of $1,000,000.00 preferred at 90, each share carrying with it the right

to subscribe to one share of common stock at $5.00. With the funds to be raised there will be an expenditure of $600,000.00 for a cement works capable of producing 800,000 barrels of cement annually; $50,000.00 to close up existing indebtedness on the Yorktown property and the balance, $300,000.00, working capital. There will remain in the treasury of the new company 5080 shares of preferred stock and approximately 4400 shares of common stock."

The defendants demurred to the bills and the cases were heard together on the demurrers by *Pierce,* J., who was of opinion that the demurrers should be sustained and ordered that decrees be entered that the bills be dismissed. By agreement of the parties the single justice reported the cases for determination by the full court.

*G. W. Anderson,* for the plaintiffs.

*H. R. Bailey,* for the Yorktown Cement Corporation.

*S. H. Pillsbury,* (*P. G. Carleton* with him,) for the defendants Bowles and others.

*G. G. Bacon,* (*W. B. Farr & A. J. Santry* with him,) for the defendant Gaston.

RUGG, C. J. These are suits in equity for the specific performance of an alleged contract. The first is brought by the Jamestown Portland Cement Corporation, a Virginia corporation, and four individuals in their capacity as a committee acting for certain stockholders in that corporation against the individual defendants as subscribers to an agreement to take stock in a proposed Massachusetts corporation and against that corporation, called the Yorktown Cement Corporation. The material averments are that the plaintiff corporation owned valuable marl and clay lands in Virginia, but was in financial difficulties. The defendant Bowles made an examination of the property and issued a prospectus according to which it seemed that these lands were capable of profitable development for the manufacture of cement. A subscription agreement was prepared, which the defendants signed, wherein they severally agreed each with the other, in consideration of the mutual agreements therein contained, to take the number of shares of preferred and common stock respectively of the Yorktown Cement Corporation (a proposed Massachusetts corporation) set opposite their respective names and to pay therefor according

to terms stated.  It was recited that the stock was to be a part of the issue referred to in the Bowles prospectus, and to be issued substantially upon the terms therein specified.  That prospectus contained a description of the property and capitalization of the plaintiff corporation, and a statement that counsel advise that "a new corporation be formed to take over the property of the present [that is the plaintiff] corporation and receive the new money." This was followed by an outline of the proposed capitalization of the new Massachusetts corporation, the terms upon which stockholders in the old corporation might exchange that stock for stock in the new corporation, and the amounts of stock proposed to be sold for cash and to be kept in the treasury.

Signature to this subscription agreement and the payment to a designated individual of a percentage upon their subscriptions (subsequently returned to the subscribers after deduction of expenses), together with the facts that that agreement was circulated for the purpose of securing subscriptions, that it was over-subscribed, and that information to this effect was communicated to the plaintiff corporation, are the grounds of the alleged liability of the defendants.

The bill avers that these facts constituted "an offer by and from said syndicate subscribers to the plaintiff corporation and its stockholders for a purchase, sale and reorganization by the syndicate subscribers in accordance with the plan outlined."  The acceptance of the offer is alleged to have taken place, through a vote of the directors of the plaintiff corporation "to accept, so far as they then had authority to accept," and through the organization of a committee of the stockholders of the plaintiff corporation and a deposit of a large part of such stock with a depository with powers to complete the alleged agreement.

These allegations fall far short of setting out a binding contract on the part of the defendants as subscribers of the subscription agreement with the plaintiffs or any of them.  There was no offer on the part of the subscribers addressed directly or indirectly to the plaintiffs.  Manifestly the basis of the whole scheme was the land owned by the plaintiff corporation.  But no obligation to buy it is set forth in the terms of the subscription agreement.  No price is fixed.  No terms of payment are stated.  No proposal is to be found in the subscription agreement on the part of the sub-

scribers to take over the property of the old corporation or the stock in it. The property was to be taken over by the proposed new corporation; but that is the only element looking in the direction of a contract between the parties to this suit which can be found in the agreement when read in connection with the prospectus. This alone without other necessary elements does not constitute a contract. The ingenious suggestion that a price for the property of the plaintiff corporation may be conjectured from the difference between the cash subscription price of shares in the new corporation and the terms upon which shareholders in the old corporation might exchange for stock in the new is in itself uncertain. Moreover, the signed documents are not reasonably susceptible of such construction. The simple matter of price in a sale is not wrapt in such obscurity in ordinary transactions.

It hardly needs to be said that business agreements are to be construed so as to carry into effect commercial transactions plainly contemplated, and that corporate forms are not permitted to be used as a fraudulent protection to wrongdoers. *Martin* v. *Meles,* 179 Mass. 114. *Sherwin* v. *Fletcher,* 168 Mass. 413. *Mills* v. *Potter,* 189 Mass. 238, 243, 244. *Athol Music Hall Co.* v. *Carey,* 116 Mass. 471. *Brightman* v. *Bates,* 175 Mass. 105. *Pennell* v. *Lothrop,* 191 Mass. 357. *J. J. McCaskill Co.* v. *United States,* 216 U. S. 504, 515. But these undoubted principles do not warrant a court in assuming a contract to exist where none can be found in the written instruments, oral negotiations and conduct of parties.

The subscription agreement with the Bowles prospectus had an important function. The two papers stated the rights and duties respecting the proposed adventure of the persons who signed. It bound them to important obligations in that regard. But it did not purport to bind them to other persons who were not parties to it, even though they ultimately might be affected by subsequent stages in the development of the plan, provided they then became subject to contractual obligations. That agreement does not constitute an offer to buy the property of the plaintiffs or any of them. Negotiations, proposals or schemes which do not possess the essential elements of a contract cannot be specifically enforced by order of a court of equity. There cannot be specific performance of anything short of a completed contract. The bargain must be determined by a meeting of minds as to the essential terms before

there can be a contract. No vital factors of it can be left to future negotiation. It must be wholly settled as to obligation and duty imposed before it can be ordered to be executed by chancery.

The bill fails to set out an enforceable contract between the plaintiffs or any of them with the defendants or any of them. Being deficient in this respect, no relief can be granted. *Fogg* v. *Price,* 145 Mass. 513, 515. *Grace* v. *Denison,* 114 Mass. 16. *Emerson* v. *Somerville,* 166 Mass. 115, 116. *Hudson Real Estate Co.* v. *Tower,* 156 Mass. 82. *Pray* v. *Clark,* 113 Mass. 283. *Domestic Telegraph & Telephone Co.* v. *Metropolitan Telephone Co.* 12 Stew. 160.

The allegations of the bill in the second suit brought by a member of the committee of stockholders of the plaintiff corporation are indistinguishable from those of the first bill in the particulars in which that has been held fatally defective.

*Order in each suit dismissing bill affirmed with costs.*