Lauriat, J.
John J. McCarthy, Jr. (“McCarthy”) brought this action against Ann G. Tobin (‘Tobin”) seeking specific performance and breach of a contract to convey real estate. McCarthy has now moved for summary judgment, alleging that the parties created a binding agreement when they signed a standard Offer to Purchase form and that the required signing of a subsequent purchase and sale agreement was a mere formality. McCarthy also argues that the parties orally modified the specified date for the execution of the purchase and sale agreement.
Tobin has also moved for summary judgment, claiming that the Offer to Purchase was not binding on the parties and that under the Statute of Frauds any extension of the date for executing the purchase and sale agreement had to be in writing. Robert and Juliann Diminico (the “Diminicos”) have moved for partial summary judgment, asserting that they have an enforceable right to purchase the subject real estate from Tobin because McCarthy did not sign a purchase and sale agreement for the property by the date specified in the Offer to Purchase.
BACKGROUND
The pleadings, affidavits and supporting documents submitted by the parties present the following facts.[2]
On August 9, 1995, McCarthy executed an Offer to Purchase Real Estate form generated by the Greater Boston Real Estate Board. The document stated that McCarthy offered to purchase a condominium unit offered to him by Tobin’s broker, Roland Koelsch (“Koelsch”) of Boston Waterfront Realty. Among other provisions, the Offer to Purchase contains a description of the subject property, price and deposit specifications, limited title requirements, time and place for closing, and a “time is of the essence” provision. Paragraph 3 of the document reads, in pertinent part:
3. The parties hereto shall, on or before 5 P.M. August 16, 1995 execute the applicable Standard Form Purchase and Sale Agreement recommended by the Greater Boston Real Estate Board or any form substantially similar thereto, which, when executed, shall be the agreement between the parties hereto.
The Offer to Purchase also contains additional terms at paragraph 7 which stated that the offer was “[s]ubject to a Purchase and Sale Agreement satisfactory to Buyer and Seller.”[3]
The Offer to Purchase was dated August 9, 1995, and was signed by McCarthy as the buyer. The document bears Tobin’s signature as the seller and indicates that she signed it on August 11, 1995. The bottom of the document shows that on August 10, 1995, Koelsch, as Tobin’s agent, accepted a deposit of $5,000 from McCarthy.
Sometime after 5:00 p.m. on August 16, 1995, Tobin’s attorney, Craig Gilmartin (“Gilmartin”), faxed a first draft of the purchase and sale agreement for the subj ect premises to McCarthy’s attorney Bradley Pinta (“Pinta”). The only attachment to the draft agreement was a telecopier transmission sheet. The transmission sheet did not contain any comments from Gilmartin. The draft agreement was not signed by Tobin.
On August 21, 1995, Pinta faxed Gilmartin a letter outlining his comments and proposed changes to the draft purchase and sale agreement. In addition to other items, Pinta requested the following modifications to the agreement:
1. Inclusion of a reference to a parking space.
2. Correction to the amount of deposit from $47,600 to $48,000.
3. Inclusion of amount of broker’s fee.
Pinta also proposed the addition of several new paragraphs to the agreement. These new paragraphs concerned title issues, casualty prior to sale, and systems within the premises.[4]
On August 22, 1995, Pinta and Gilmartin had a telephone conversation regarding the proposed revi *267 sions to the first draft of the purchase and sale agreement. During this conversation, Gilmartin did not obj ect to the fact that the purchase and sale agreement had not been executed on August 16, 1995. Gilmartin and Pinta did not discuss any extension of the date for signing the purchase and sale agreement.
On August 23, 1995, Gilmartin sent Pinta a second draft of the purchase and sale agreement. The only paper accompanying the draft was the telecopier transmission sheet. The transmission sheet did not contain any mention of a need for executing the purchase and sale agreement that day, nor did it state any other deadline for doing so.
On August 24, 1995, Pinta forwarded the second draft of the purchase and sale agreement to McCarthy for his review and execution. On Friday, August 25, 1995, Pinta called Gilmartin at around .4:00 or 5:00 p.m. to inform him that the purchase and sale agreement was acceptable, that McCarthy would execute it, and that the papers would be delivered to Gilmartin on Monday, August 28, 1995.[5] On Saturday, August 26, 1995, McCarthy executed the purchase and sale agreement and arranged for its delivery Monday morning to Koelsch along with the balance of the deposit of $48,000.
On August 26, 1995, Tobin entered into a separate agreement to sell the subject real estate to the Diminicos, who offered $50,000 more for the property than McCarthy. The Diminico offer was conveyed to Tobin by another broker at Boston Waterfront Realty named Richard Haen ("Haen”). Neither Tobin nor Haen attempted to contact Gilmartin to determine the status of the purchase and sale agreement with McCarthy. Tobin accepted the Diminico’s offer based on Haen’s advice that McCarthy was no longer interested in the properly, that she had no legal obligation to McCarthy, and that she could sign an agreement with the Diminicos without contacting her attorney, Gilmartin. Tobin also did not contact Koelsch or McCarthy.
On August 28, 1995, Koelsch received from McCarthy the executed purchase and sale agreement and the deposit check for $48,000. Sometime on August 28, 1995, Koelsch deposited McCarthy’s check for the deposit. Also on August 28th, the executed purchase and sale agreement was delivered to Gilmartin. Pinta attached a letter to the agreement which indicated that Koelsch was holding the deposit check and that the documents were being delivered in accordance with Pinta’s and Gilmartin’s conversation on August 25th. Gilmartin did not object to the delivery of the documents, nor did he respond that the agreement was late in any way.
On August 29, 1995, Gilmartin informed Pinta that the purchase and sale agreement executed by McCarthy was late and that Tobin had already executed a purchase and sale agreement with the Diminicos.
Sometime in September 1995, Tobin and the Diminicos entered into a purchase and sale agreement for the subject premises. On September 25, 1995, before the Diminicos had an opportunity to close on their purchase of the property, McCarthy filed this action against Tobin for specific performance and damages. On October 17, 1995, the Diminicos intervened in this action and filed a complaint for declaratory relief and damages for tortious interference with contractual and advantageous relations, alleging that they, and not McCarthy, were entitled to purchase the subject property.
On February 8, 1996, all of the parties filed motions for summary judgment. A hearing on those motions was held on March 12, 1996.
DISCUSSION
Summary judgment must be granted where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the moving party is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). With respect to any claim on which the party moving for summary judgment does not have the burden of proof at trial, it may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); accord, Kourouvacilis v. General Motors Corp. 410 Mass. 706, 716 (1991). “If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat a motion for summary judgment.” Pederson v. Time, Inc., 404 Mass. at 17. The opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment. LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
The determination of whether there exists a contract for the sale of real estate is usually a question for the trier of fact. Hamad v. Manuel 26 Mass.App.Ct. 966, 967 (1988); Nelson v. Rebello, 26 Mass.App.Ct. 270, 272 (1988); Kinchla v. Welsh, 8 Mass.App.Ct. 367, 370 (1979). Absent any dispute of material fact, however, the court may rule on that issue as a matter of law. See Blomendale v. Imbrescia, 25 Mass.App.Ct. 144 (1987). In the present case, most of the dispositive evidence is documentary and is undisputed.
Two competing principles have evolved for interpreting offers to purchase real estate. As a general rule, where parties sign a writing that contains language referring to the execution of a purchase and sale agreement, it justifies a strong inference that certain *268 material terms are undecided and that the parties do not intend to be bound at that time. Rosenfield v. United States Trust Co., 290 Mass. 210, 216 (1935); Doten v. Chase, 237 Mass. 218, 220 (1921); Levenson v. L.M.I. Realty Corp., 31 Mass.App.Ct. 127, 130 (1991); Goren v. Royal Investments, Inc., 25 Mass.App.Ct. 137, 140 (1987); Currier v. Kosinski, 24 Mass.App.Ct 106, 108 (1987). See Chapin v. Ruby, 321 Mass. 512, 515 (1947). The controlling factor, however, is the intention of the parties. Levenson, supra at 130. A preliminary written memorandum concerning several business points agreed upon by the parties as an agreement to reach an agreement imposes no obligation on the parties. Goren, supra at 140-41. Where execution of a more formal instrument is more than a mere formality, the parties do not intend to be presently bound. Coan v. Holbrook, 327 Mass. 221, 224 (1951).
Material terms in an agreement for the sale of real estate include matters such as description of the property, purchase price, deposit specifications, mortgage financing, the handling of current and future leases, payment of broker’s commission, and closing date. Nelson, supra at 271, 273; Blomendale, supra at 146; Goren, supra at 138, 141. In contrast, issues of title requirements, conformance with local law, premises condition, use of purchase money to clear title, maintenance and assignment of insurance, closing adjustments, holding of deposit by broker, and disclaimer of implied warranty are generally “subsidiary matters and norms exist for their customary resolution.” Goren, supra at 141. Parties may ensure that a potentially ambiguous document is not binding by including the following language which speaks to the parties’ intent:
The purpose of this document is to memorialize certain business points. The parties mutually acknowledge that their agreement is qualified and that they, therefore, contemplate the drafting and execution of a more detailed agreement. They intend to be bound only by the execution of such agreement and not by this preliminary document.
Goren, supra at 143.
The competing principle is that if the document constitutes the parties’ agreement on material terms, it is binding. Coan, supra at 224; Goren, supra at 141; Rosenfleld, supra at 216. In that situation, an inference arises that any subsequent document that the parties agree to execute is intended to serve merely as a polished memorandum to tidy up the ministerial and nonessential terms of an already binding contract. Goren, supra at 140.
In the case at bar, the Offer to Purchase form does not contain the “safe harbor” language suggested by Goren to insure that the preliminary agreement between McCarthy and Tobin was just that. However, at paragraph three of the Offer to Purchase, the parties agreed to execute a standard purchase and sale agreement or any form substantially similar thereto, “which when executed, shall be the agreement between the parties hereto.” More importantly, at paragraph seven, the parties agreed that the offer to purchase was “(s]ubject to a purchase and sale agreement satisfactory to both parties.” This language indicates that parties did not intend to be bound by the offer to purchase form and that the execution of a purchase and sale agreement satisfactory to both parties was required to form a binding contract for the sale of the subject real estate. See Levenson, supra at 128-31 (purpose of the words “we will enter into a purchase and sale agreement forthwith satisfactory to both parties” as used in offer letter was to insure that seller would not be bound until his attorney reviewed the purchase and sale agreement, and strongly suggested that the latter was to be the decisive document). Furthermore, McCarthy’s introduction of new elements in a rider to the purchase and sale agreement suggests that the parties did not intend to be bound by the Offer to Purchase. See Blomendale, supra at 147.
Specific performance may only be granted on the basis of a completed and definite contract. Shayeb v. Holland, 321 Mass. 429, 430 (1947); Jamestown Portland Cement Corp. v. Bowles, 228 Mass. 176, 180 (1917). See Levenson, supra (since parties did not enter into contract for sale of real property, buyer not entitled to specific performance). See also Penner v. Equitable Real Estate Investment Management, Inc., 978 F.2d 770, 772 (1st Cir. 1992) (seller not entitled to specific performance or damages for breach of contract where letters and other preliminary documents exchanged by the parties did not amount to contract to convey property; parties intended to execute purchase and sale agreement as binding contract). There must be a meeting of the minds as to the essential terms of the bargain before there can be a contract. Bowles, supra at 180-81 The contract must be wholly settled as to obligation and duty imposed before specific performance will lie. Id. at 181.
In this case, since the offer to purchase did not constitute a binding contract between the parties, McCarthy is not entitled to specific performance of the conveyance of the subject real estate.
In order to invoke the benefits of an implied covenant of good faith and fair dealing there must be a contract of which the implied covenant could be a part. Id. Since there was no contract in this case, Tobin had no duty to continue to negotiate in good faith the terms of a purchase and sale agreement, and Tobin was not required to execute the final draft of the purchase and sale agreement conveying the property to McCarthy. See Schwanbeck v. Federal-Mogul Corp., 412 Mass. 703, 705-07 (1992) (even where parties’letter of intent had clause indicating that they would proceed in good faith to negotiate binding, definitive agreement for purchase of business, it was merely an expression of present intent and not a binding obligation). See also Capezzuto v. John Hancock Mut. Life Ins. Co., 394 Mass. 399, 403 (1985) (“a seller ordinarily expects that he is free to sell to whomever he chooses until he has signed a purchase and sale agreement”). As a result, *269 this court need not reach or address the effect of any alleged oral modification of the date for the signing of the purchase and sale agreement between Tobin and McCarthy. Lastly, since Tobin and McCarthy did not execute a completed contract, McCarthy’s claims for damages based on a breach of contract will not lie.
ORDER
For the foregoing reasons, the Motion of Ann G. Tobin for Summary Judgment is ALLOWED. Robert and Juliann Diminico’s Motion for Partial Summary Judgment on Count I of their Complaint is ALLOWED insofar as it requests that this Court DECLARE that Ann Tobin has no obligation to sell and John McCarthy has no right to buy the subject premises. Plaintiffs Cross-Motion for Summary Judgment is DENIED.

This court has incorporated in this section its ruling on the parties’ motions to strike by excluding those relevant portions of the subject affidavits and deposition testimony which were not based on personal knowledge. See Madsen v. Erwin, 395 mass. 715, 721 (1985).

Paragraph 7 also has language regarding a chandelier, murals, a fireplace, and a mantel.

Pinta also requested a clarification of provisions concerning murals, a chandelier and a mantel.

The parties disagree about the nature of the conversation between Pinta and Gilmartin on August 25, 1995. Pinta contends that Gilmartin assented to the delivery of the final draft of the purchase and sale agreement on Monday, August 28, 1995. Gilmartin admits that he spoke to Pinta on August 25th but that he only agreed to receiving copies of the signed purchase and sale agreement on Monday, August 28th. Instead, Gilmartin testified that he understood that the brokers would get the signed agreement on Friday, August 25th.