King, J.
INTRODUCTION
The above captioned action, which was filed on December 20, 1999, arises out of the plaintiffs effort to purchase condominium Unit 7S (Unit 7S), situated at 34V2 Beacon Street, Boston, Massachusetts. The complaint asserts claims arising out of defendants’ alleged promise to sell the unit to the plaintiff for: (1) breach of contract; (2) breach of implied covenant of good faith and fair dealing; (3) promissory estoppel; (4) fraud; and (5) intentional interference with advantageous relations. The complaint also requests the issuance of a memorandum of lis pendens pursuant to G.L.c. 184, §15, and an order of specific performance directing defendants to convey Unit 7S to the plaintiff.
Defendants have asserted counterclaims for abuse of process and for violation of G.L.c. 93A. An affirmative defense raised by the defendants is that the plaintiffs contract claims are barred by the Statute of Frauds. G.L.c. 259, §1.
On the face of the complaint, this case “affects the title to real property” within the meaning of the lis pendens statute. G.L.c. 184, §15. For this reason, on December 20, 1999, the court (Connolly, J.) issued an ex parte memorandum of lis pendens against the property. Thereafter, the defendants filed a motion for summary judgment and a motion to dissolve the lis pendens. A hearing on these motions was held on January 26, 2000.
Although plaintiffs claim that he had a verbal agreement to purchase Unit 7S is disputed, the defendants assert that they are entitled to summary judgment even if the facts as alleged by the plaintiff concerning the existence of a verbal contract are true.[2] Under these circumstances, the court will assume, for purposes of the summary judgment motion, that the facts alleged concerning the existence of a verbal agreement to sell the unit to the plaintiff are true to determine whether plaintiffs claims are barred by the Statute of Frauds. The court now sets forth the facts alleged by the plaintiff pertaining to the alleged verbal agreement for the purchase of Unit 7S.[3]
BACKGROUND
The defendant, Tudor LLC (Tudor), is the record owner of land known as and numbered 34V2 Beacon Street, Boston, Massachusetts (the premises). Tudor has recorded a Master Deed and a Declaration of Trust of the Tudor Condominium Trust for the premises, which consists of seventeen (17) condominium units. Tudor was created to develop, renovate and market these condominiums.
Defendant Geoffrey Caraboolad (Caraboolad) and defendant Todd Finard (Finard) are Tudor’s managers. They had authority to bind Tudor in connection with the sale of Tudor’s condominiums.
Tudor retained Itzkan and Marchiel Real Estate (Itzkan and Marchiel) as its listing agent to sell the condominium units. The premises were also listed for sale with other brokers including Beth Dickerson (Dickerson), a real estate broker with R.M. Bradley. Defendant Jean Abouhamad (Abouhamad) is a broker employed by Itzkan and Marchiel. He has an ownership interest in Tudor and referred to himself as a “partner” of Tudor’s principals. Abouhamad told Dickerson that he was authorized to speak on behalf of Tudor and that he had the power of attorney for Tudor to execute documents on its behalf.
The plaintiff, George T. Albrecht, is a successful and sophisticated businessman. He is the owner of Wo-burn Foreign Motors and other automobile dealerships.
Unit 7S, one of the condominiums in the premises, is a unique property in Boston. The premises is located at the corner of Joy and Beacon Streets on Beacon Hill. Unit 7S’s front windows have a spectacular view of Boston Common; its rear windows have a view of the Charles River.
All of Albrecht’s negotiations concerning Unit 7S were with Dickerson. Abouhamad would consult with Caraboolad and Finard before instructing Dickerson as to Tudor’s position with regard to any offers. Once Abouhamad communicated Caraboolad and Finard’s position to her, Dickerson had authority to act on behalf of Tudor. In late November 1999, Dickerson showed Albrecht Units 7S and 7N of the premises, which had a combined listing price of $4.6 million *170 dollars. Albrecht, who was interested in combining the two units for his own use, made a written offer to purchase both units for $3.55 million dollars. Dickerson conveyed that offer to Abouhamad who subsequently informed Dickerson that the offer was rejected as being too low by Tudor.
On December 8, 1999, Albrecht made a written offer to purchase Unit 7S for $2.1 million dollars, with the right of first refusal on the purchase of Unit 7N and certain other terms as set forth in the written offer. Dickerson transmitted this offer to Abouhamad. Subsequently, a series of back and forth negotiations concerning the selling price took place. Tudor gradually lowered its asking price and Albrecht increased his offering price. Eventually, on December 9, 1999, Abouhamad told Dickerson that he had checked with his partners and they would accept $2,225,000 for Unit 7S, would grant a right of first refusal on Unit 7N, and would provide a fire box and flue for a fireplace in the master bedroom of Unit 7S. Abouhamad told Dickerson that this was Tudor’s final offer and that it would not be subject to further negotiation. Later that day, Dickerson called Albrecht, who was in Florida, and communicated Tudor’s counter proposal to him.
At approximately 4:30 p.m. on December 9, 1999, Albrecht informed Dickerson that he agreed to Tudor’s terms. Dickerson then told Albrecht that they had a deal; as far as Dickerson was concerned, she had accepted Albrecht’s offer on behalf of Tudor. Dickerson then contacted Abouhamad and Mr. Berkowski, a broker employed by Itzkan and Marchiel, and told them that Albrecht had accepted Tudor’s offer. She then took Albrecht’s December 8, 1999 “offer to purchase real estate” and altered the terms of the offer to conform with the December 9, 1999 verbal agreement. The “offer to purchase real estate” had been signed by Albrecht on December 8, 1999. Attached to the “offer to sell real estate” was a one-page addendum requiring that the condominium documents must be approved by the buyer’s attorney, that there be a satisfactory building inspection, and that the seller would provide a fireplace box and working flue in the master bedroom before closing. Prior to December 9, 1999, Albrecht gave Dickerson a check for $2,500, made payable to R.M. Bradley.
The December 9, 1999 “offer to purchase real estate” states that Albrecht offered to pay $2,225,000 for unit 7S at the premises, that $2,500 was being submitted with the offer, and that:
this offer is good until 10:00 p.m. on December 9, 1999 at or before which time a copy hereof shall be signed by you, the seller . . . signifying acceptance of this offer and returned to me forthwith, otherwise this offer shall be considered as rejected and the money deposited herewith shall be returned to me forthwith.
The last line of the “offer to purchase real estate” was a signature line where the agent for the seller could have indicated acceptance of the offer. The document captioned “offer to purchase real estate,” which was faxed to Abouhamad on December 9, 1999, was never signed by the seller or its agent.
Abouhamad told Dickerson to fax the “offer to purchase real estate” to Caraboolad to make sure that he would be available to receive the fax and to sign “the offer to purchase real estate.” Dickerson then spoke to Caraboolad who told her that he was leaving the office and that she should fax the document to Abouhamad who had “power of attorney” and would be signing it on behalf of Tudor. She then called Abouhamad who answered the call on his cellphone. He told her that he was on his way home for dinner but that she should fax the document to his office and that he would return to his office after dinner to sign it. He also told her to fax the agreement to Tudor’s attorney, Craig Gilmartin. She then faxed the document to both Abouhamad and Gilmartin. The fax cover sheet states that the document was “re: offer 7S . . . Tudor buyer George Albrecht.” The time stated on the fax copy is 6:53 p.m. on December 9, 1999. Approximately one hour later, at 7:50 p.m., Abouhamad called Dickerson and told her that he was sorry but that he had received a $2,500,000 offer which Tudor was going to accept. He informed her that Unit 7S would not be sold to Albrecht. Dickerson promptly called Albrecht and informed him that Tudor would not be selling Unit 7S to him.
On December 10, 1999, Albrecht spoke to Finard over the telephone and told him that Finard’s partners were refusing to honor their agreement to sell him Unit 7S. Finard told Albrecht that he had to go along with his partners. As a result, this action was commenced on December 20, 1999.
There is no evidence that Albrecht did anything in reliance on Dickerson’s acceptance of his offer to purchase during the three hours between the time his offer was accepted and the time he was told Tudor refused to sell him Unit 7S. Moreover, Albrecht has made other arrangements for housing. Specifically, on or about November 12, 1999, Albrecht made an offer to purchase a condominium unit 1301 at Trinity Place, another luxury condominium located in the Copley Square section of Boston. The offer was accepted and a purchase and sale agreement was executed on December 30, 1999 for a purchase price of $3,164,306 dollars.
DISCUSSION
Summary judgment shall be granted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. See Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and *171 that, as a result, the moving party is entitled to judgment as a matter of law. See Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of genuine issues of material fact. Id. at 17. The court should not weigh evidence, assess credibility, or find facts. The court may only consider undisputed material facts and apply them to the law. See Kelley v. Rossi, 395 Mass. 659, 663 (1985).
The determination of whether a contract for the sale of real estate exists is usually a question for the trier of fact. See Hamad v. Manuel, 26 Mass.App.Ct. 966, 967 (1988); Nelson v. Rebello, 26 Mass.App.Ct. 270, 272 (1988); Kinchla v. Welch, 8 Mass.App.Ct. 367, 370 (1979). Absent any dispute of material fact, however, the court may rule on the case as a matter of law. See Blomendale v. Imbrescia, 25 Mass.App.Ct. 144, 144 (1987).
Albrecht’s Contract Claims are Barred by the Statute of Frauds
For an agreement for the purchase and sale of real estate to be enforceable, it must be written and signed by the parties. See Arthur L. Eno, Jr. and William V. Hovey, Real Estate Law §3.1, at 24 (3rd ed. 1995), citing G.L.c. 259, §1, the Massachusetts Statute of Frauds.[4] See also, Schwarnbeck v. Federal-Mogul Corp., 412 Mass. 703, 709 (1992) (holding that “any promise involving real property is enforceable only if that promise meets the requirements of the statute”). The Statute of Frauds allows parties to negotiate the essential terms of an agreement for the purchase and sale of real estate without binding either of the parties. See Eno & Hovey, supra at 24.
Since there exists no written contract signed by Tudor or its agent, Albrecht’s claim for breach of contract is invalid as a matter of law and summary judgment must enter in favor of the defendants. See Simon v. Simon, 35 Mass.App.Ct. 705, 709 (1994) (whether a sufficient writing exists is a question of law for the court). See also Bogash v. Studios, Inc., 303 Mass. 207, 207-08 (1939) (holding that where the statute of frauds is pleaded, the burden is on the plaintiff to demonstrate that a sufficient writing exists).
Albrecht argues that the “offer to purchase real estate,” coupled with Dickerson’s fax letter, constitutes a sufficient writing to meet the requirements of the Statutes of Frauds. Even if Dickerson had authority to bind Tudor and even if the “offer to purchase real estate” set forth the material terms of the agreement,[5] which it clearly does not, Dickerson never signed the document on behalf of Tudor or anyone else. Indeed, the Statute of Frauds has been seen as a complete defense in cases involving much more compelling facts than the instant action. See Espy v. Wells, 349 Mass. 314 (1965) (where the court held that neither the seller nor her agent ever signed any memorandum to satisfy the Statute of Frauds and dismissed the claim).
Further, the fact Albrecht altered the time within which the Second Offer could be accepted is compelling evidence that no binding contract existed. “The norm in real estate transactions has been that, where the parties sign a writing contemplating the later execution of a purchase and sale agreement, they do not intend to be bound until that time.” Levenson v. L.M.I. Realty Corp., 31 Mass.App.Ct. 127, 130 (1991).
Albrecht relies, in large part, on a case applying Rhode Island law which he considers to be on all fours with the instant case. The court finds this case, as well as the others cited by Albrecht, to be inapposite and readily distinguishable. For instance, in the Rhode Island case, unlike here, the buyer met with the seller’s attorney, specifically discussed a letter signed by his real estate broker setting forth the material terms of the transaction, agreed to be bound by those terms, requested that the attorney draft a purchase and sale agreement incorporating those terms, and later attempted to back out of the transaction. See Greensleeves v. Smiley, 694 A.2d 714, 715-16 (R.I. 1997).
Albrecht’s request for specific performance of his contract fails as a matter of law as an action for specific performance can only be maintained where a contract exists. “It is elementary and basic law, of course, that there must be a valid and enforceable contract before there can b e an order that it b e specifically performed. ” Biship, Richard W., Massachusetts Practice, Prima Facie Case — Proof and Defense, §46.6 (4th ed. 1997), citing Jamestown Portland Cement Corp. v. Bowles, 228 Mass. 176 (1917); see also Penner v. Equitable Real Estate Inv. Mgmt., Inc., 978 F.2d 770, 773 (D. Mass. 1992) (denying specific performance where no contract existed notwithstanding that parties exchanged many communications regarding sale of property). Moreover, the Statute of Frauds applies equally to a claim for specific performance. See Cellucci v. Sun Oil, Inc., 2 Mass.App.Ct. 722, 727, affirmed 368 Mass. 811 (1974), citing Witherington v. Eldredge, 264 Mass. 166, 175 (1928). Since there existed no valid contract between the parties, summary judgment will enter in favor of the defendants with respect to Albrecht’s claim for specific performance.
In Count II of the complaint, Albrecht alleges that defendants breached the implied covenant of good faith and fair dealing. To support such a claim, however, Albrecht must demonstrate the existence of a contract. Count II fails because Albrecht cannot demonstrate the execution of a contract. See Levenson v. LMI Realty Corp., 31 Mass.App.Ct. 127, 131 (1991) (holding where parties had not reached a binding contract, the implied covenant of good faith and fair dealing did not apply). In fact, the implied covenant of good faith and fair dealing is specifically derived from *172 the Uniform Commercial Code, G.L.c. 106, §1-203, which provides that “[e]very contract within this chapter imposes an obligation of good faith in its performance or enforcement.” Fortune v. Nt’l. Cash Register, 373 Mass. 96, 102-03 (1977). The implied covenant of good faith and fair dealing has no application to the instant matter. As no contract existed between the parties, summary judgment will enter in favor of the defendants with respect to Count II of the complaint.
The Evidence Does Not Support Albrecht’s Estoppel Claim
In Count III of the complaint, Albrecht attempts to articulate a claim for promissory estoppel. As adopted by the court in Loranger Construction Corp. v. E.F. Hauserman Co., 6 Mass.App.Ct. 152, 155 (1978), the theory of promissory estoppel permits recovery if: (1) a promisor makes a promise which he should reasonablely expect to induce action or forbearance of a definite and substantial character on the part of the promisee: (2) the promise does induce such action or forbearance; and (3) injustice can be avoided only by enforcement of the promise. In the instant matter, not only was Albrecht’s reliance on an alleged promise unreasonable, but he did not materially change his position.
Albrecht has not produced any evidence that he reasonably acted or forbore from acting in a definite and substantial way in response to any alleged promise. As the evidence clearly establishes, Albrecht’s second offer was accepted at 4:30 p.m. on December 9, 1999. Approximately three hours later, he was told Tudor would not sell him Unit 7S. There is no evidence that he did anything during this three-hour period in reliance on Dickerson’s statement that they had a deal.
As a general rule, part “performance or a change in position in reliance on an oral contract to convey land will estop a defendant from raising the Statute of Frauds as a defense in a suit in equity for specific performance of the contract.” See Arthur L. Eno, Jr. and William V. Hovey, Real Estate Law §3.2, at 24 (3rd ed. 1995). This general rule, however, is inapposite to the case at bar.
Albrecht argues that he has relied to his detriment “on the defendants’ promise to sell [him] Unit 7S,” which he considers “a unique property.” In addition, he contends that what “had been a refundable deposit on another unit in Boston is now non-refundable.” This is reportedly because he “has stopped looking at other properties in Boston and the opportunity to purchase many of these potential properties likely no longer exists.” The Rule 56 materials submitted to this court do not support these contentions. As mentioned in the background supra, Trinity Place has confirmed, in response to a subpoena, that Albrecht has already entered into a P&S agreement with them. It cannot be said, therefore, that Albrecht has suffered the harms he complains of. These facts are simply not sufficient to support an estoppel. Compare Levin v. Rose, 302 Mass. 378, 382 (1939) (holding that the Statute of Frauds is not a bar where the denial of relief, to one who has been misled to his harm, would cause “an unjust and unconscientious injury and loss”) (citations omitted).
Facts Alleged by Albrecht Do Not Sustain His Fraud Claim
In Count IV of the complaint, Albrecht asserts that the defendants’ actions “constitute actionable fraud.” Albrecht claims that the “defendants made a specific promise to plaintiff to convey him the property . . . either [knowing] it was false or [acting] negligently in making it without determining if it was true or false.” As a matter of law, these allegations, even if true, do not state a valid claim for fraud. See Ranicar v. Goodwin, 326 Mass. 710, 713 (1951) (holding that the failure to carry out an oral promise to convey land, standing by itself, is not fraud); Chase v. Aetna Rubber Co., 321 Mass. 721, 724 (1947) (noting mere nonperformance of an oral contract within the statute of frauds does not constitute fraud) (citations omitted).
Moreover, a fundamental exception to the general notice pleading requirement in Massachusetts is that allegations of fraud shall be stated “with particularity.” Mass.R.Civ.P. 9(b). Normally, this means that the pleading must state the time, place and content of the fraud and what was obtained or given up as a consequence of the fraud. See Wayne Investment, Inc. v. Gulf Oil Corp., 739 F.2d 11, 13 (1st Cir. 1984) (holding plaintiffs speculations did not satisfy Rule 9(b) requirements); Friedman v. Jablonski, 371 Mass. 482 (1976). Further, complaints alleging fraud must list those facts giving rise to an inference that the defendant knew of the false representations. DeVancey v. Chester, 813 F.2d 566 (2nd Cir. 1987); see also Connecticut National Bank v. Fluour Corp., 808 F.2d 1957 (2nd Cir. 1987) (although the complaint alleged that the defendant intended to commit fraud, it did not allege any facts or circumstances showing defendant’s intent). An “oblique remark” merely suggesting fraud will not suffice for the purpose of pleading. Charbonnier v. Amico, 367 Mass. 146, 152 (1975). It is the court’s view that plaintiff s affidavits in support of the allegations, contained in Count VI, are not sufficient to withstand a motion for summary judgment.
Albrecht’s Intentional Interference with Advantages Relations Claim Must Fail— There Was Neither Interference with Third-Party’s Relations or Contract Nor Any Improper Motives or Means
In Count V, Albrecht alleges that the defendants interfered with his advantageous relations. “A claim of interference with an advantageous business relationship involves one who, without privilege to do so, intentionally induces or causes a third person not to enter into or continue a business relationship with another.” Riseman v. Orion Research, Inc., 394 Mass. *173 311. 314 (1985), citing Comey v. Hill, 387 Mass. 11, 19 (1982); Owen v. Williams, 322 Mass. 356, 360 (1948). This claim fails because a party “cannot be guilty of tortious interference with its own contract.” Schinkle v. Maxi-Holding, Inc., 30 Mass.App.Ct. 41, 50 (1991).
ORDER
For the foregoing reasons, it is hereby ORDERED that;
1. Summary judgment shall enter for the defendants on all counts of the plaintiffs complaint;
2. The defendants’ motion to dissolve the memorandum of lis pendens is ALLOWED; and
3. Plaintiffs motion to stay order dissolving memorandum of lis pendens pending appeal is DENIED.

For this reason the court need not rule on defendants’ motion to strike portions of Beth Dickerson’s affidavit.

Plaintiff argues that defendants’ summary judgment motion is premature because plaintiff has not had an opportunity to complete discovery. Plaintiff has deposed two witnesses, including defendant Abouhamad, and defendants have responded to plaintiffs notice to produce documents. It is highly unlikely that any further discovery would disclose any additional evidence relating to the Statute of Frauds defense. For this reason, the court denied plaintiffs request to postpone the hearing on the summary judgment motion.

G.L.c. 259, §1, provides, in pertinent part, that: “[njo action shall be brought . . . [ulpon a contract for the sale of lands . . . (u ]nless the promise, contract or agreement ... is in writing and signed by the party to be charged therewith.”

For example, courts have held material terms to include matters such as price, deposit specifications, mortgage financing, the handling of current and future leases, payment of the broker’s commission, and closing date. See Hamad v. Manuel, 26 Mass.App.Ct. 966, 967 (1988).