ERIC D. BLOMENDALE *vs.* SALVATORE A. IMBRESCIA.

No. 87-115.

Suffolk.   October 20, 1987. — December 9, 1987.

Present: DREBEN, KASS, & FINE, JJ.

*Contract,* What constitutes. *Real Property,* Purchase and sale agreement.

A preliminary agreement captioned "Offer to Purchase" which established
certain terms of a real estate transaction, including the place, price,
deposit, and closing date, did not constitute a complete and final contract,
where the parties did not intend to be bound by the preliminary agreement,
inasmuch as the final agreement, when submitted, contained new ele-
ments with respect to various warranties asked of the seller by the buyer
which had not been previously discussed, let alone agreed upon. [145-
147]

CIVIL ACTION commenced in the Superior Court Department
on April 4, 1985.

A motion for summary judgment was heard by *Haskell C.
Freedman,* J., sitting under statutory authority.

*Marc S. Seigle* for the plaintiff.

*Julian J. D'Agostine (Howard Speicher* with him) for the
defendant.

KASS, J. As in *Goren* v. *Royal Invs. Inc., ante* 137 (1987),
the controversy is about whether a preliminary writing which
contemplates a formal and final agreement binds parties to a
real estate transaction. Upon a motion for summary judgment,
argued on the basis of affidavits and depositions, a judge ruled
that the parties were not bound. Judgment entered dismissing
the action, and the plaintiff Blomendale has appealed. Most,
although not all, of the dispositive, uncontested, evidence was
documentary. There was no dispute over any material fact.
See *Community Natl. Bank* v. *Dawes,* 369 Mass. 550, 553-557
(1976). Compare *Noyes* v. *Quincy Mut. Fire Ins. Co.,* 7 Mass.
App. Ct. 723, 725-726 (1979).

Compared to the detailed offer in the *Goren* case, the preliminary document upon which the plaintiff Blomendale stakes his rights is crude. The writing consists of a stationer's form captioned "OFFER TO PURCHASE." Dated November 16, 1984, the paper says (blanks in the form are filled in handwriting):

"I offer to Sal Imbrescia for the property located at 218 to 230 Broadway in the City of Chelsea, Mass. containing about 12,000 app. sq. ft. of land with the buildings thereon, $750,000.00 to be paid as follows: cash . . .

"I hand you check for $10,000 make to S. Imbrescia & McCarthy R.E. check # 109 held by McCarthy R.E. to bind this offer, to be returned to me, if it is not accepted before November 16, 1984. If it is accepted, I agree to sign your usual real estate agreement to carry this out and take title within on or before 90 days by 3-16-85 . . ., and to make an additional deposit of $ , the deposit to be applied to the purchase price. Signed in triplicate. No contingenies [*sic*]."

Imbrescia signed on the line marked "Accepted." The paper was also signed by Blomendale as buyer and by R. W. McCarthy as realtor.

Blomendale delivered to the broker a $10,000 check payable to Sal Imbrescia and McCarthy R.E. The check bore a notation "TBC Upon entering P & S." On deposition, Blomendale testified that "TBC" stood for "to be cashed."

Phrases such as "your usual real estate agreement" suggest that the parties anticipated only a routine formality, such as may be satisfied by an unaltered standard form. See the *Coan* v. *Holbrook,* 327 Mass. 221 (1951), line of cases discussed in *Goren* v. *Royal Invs. Inc., supra* at 141-142. There is no evidence, however, that Imbrescia had any "usual" form of purchase and sale agreement. Indeed, the evidence is to the contrary, i.e., that Imbrescia relied upon Blomendale to see to the drawing of a purchase and sale agreement and that Imbrescia became impatient when, almost a month after the parties signed the offer form, a purchase and sale agreement had not yet been submitted by Blomendale.

When a purchase and sale agreement (on the Greater Boston Real Estate Board form) was submitted, it contained, in a typewritten addendum, a provision requiring the seller to warrant that information set forth on a rent roll was "true, complete and accurate in all respects, and that all indicated rentals conform with the rent control laws and all rules and regulations of the City of Chelsea in all respects." The draft agreement further called upon the seller to warrant that all leases were in full force and effect and to assign all interests in security deposits.

Other provisions in the addendum required: all new leases to be entered into before closing were to be submitted to the buyer for the buyer's approval; the buyer, before closing, was to have "reasonable access to inspect the premises;" the seller was to deliver a warranty bill of sale of all personal property located on or used in connection with the premises and was to warrant that each apartment had a refrigerator and a stove; and the seller was to warrant that there were no contracts, oral or written, involving "the premises which [would] be binding upon the Buyer or affect the premises in any manner other than the leases and rental arrangement hereinbefore referred to."

None of those provisions could be regarded as astonishing or grasping on the part of the proposed buyer. They were not, however, ministerial matters, and they could be thought to be inconsistent with the "no contingencies" provision in the preliminary document.

We need not decide if the sketchy preliminary document would have had binding status if Blomendale had tendered an unrestricted deposit with it and if Imbrescia had tendered to Blomendale a purchase and sale agreement on an unmodified standard real estate board form. The preliminary document appears to have nailed down the most basic points: place, price, deposit, financing terms (i.e., none), and an outside closing date. Such a document is not without potential force. Certainly any person intending not to be bound who employs such a form, which says much as to agreement but leaves

many points uncovered, must be ready to expect that the other party will think the document binding and actionable.

In the instant case, the restriction on delivery of the deposit and, above all, the various warranties asked of the seller by the buyer reflect imperfect negotiations at the time of the original agreement. The buyer introduced new elements which had not been discussed, let alone agreed upon. It follows that the parties did not intend to be bound by the preliminary document. The case, therefore, falls into the *Rosenfield* v. *United States Trust Co.,* 290 Mass. 210 (1935), line of cases discussed in *Goren* v. *Royal Invs. Inc.,* decided this day and reported *ante* 137.

*Judgment affirmed.*