DEAN NELSEN vs. MARILYN REBELLO & another. [1]

No. 87-1078.

Plymouth. June 2, 1988. — August 2, 1988.

Present: DREBEN, KASS, & FINE, JJ.

Contract, Sale of real estate, Offer and acceptance, What constitutes, Spe-
    cific performance. Real Property, Sale, Purchase and sale agreement,
    Specific performance. Broker, Commission. Evidence, Parol evidence.

In a civil action seeking the conveyance of real estate based on a written
    offer form signed by both parties, the judge correctly determined the
    preliminary agreement was not a binding contract where the offer form
    was silent with regard to payment of the broker's fee, a material element,
    and where the parties, at the time they signed the offer, had different
    understandings about the payment of the broker's commission. [273-274]
The judge at the trial of an action seeking specific performance with respect
    to an alleged agreement to convey property, did not err in admitting
    certain evidence on the issue whether a binding agreement had been
    reached, nor did he err in excluding testimony as to a witness's reputation
    for truth and veracity. [274]


CIVIL ACTION commenced in the Superior Court Department
on October 15, 1985.

The case was heard by John D. Sheehan, J.

Martin Lipman for the plaintiff.

Robert L. Perry for the defendants.

FINE, J. Memoranda concerning the sale and purchase of
real estate which are made on preliminary "offer" forms fre-
quently contemplate more formal purchase and sale agree-
ments. Some of those memoranda amount to binding contracts;
others do not. Compare Coan v. Holbrook, 327 Mass. 221,
224 (1951), and Goren v. Royal Invs. Inc., 25 Mass. App.
Ct. 137, 141 (1987), with Blomendale v. Imbrescia, 25 Mass.

_____

[1] Aries Rebello.

App. Ct. 144, 147 (1987). A Superior Court judge, sitting without a jury, determined that the preliminary writing in this case was not a binding contract and denied the plaintiff-buyer's prayer for specific performance. We affirm.

We summarize the facts found by the judge. The sellers entered into an exclusive ninety-day listing agreement for the sale of their residential property with Michael O'Brien, a real estate broker. When the ninety-day period expired on August 31, 1985, the property remained unsold. The sellers agreed that O'Brien could continue to list the property, although on a non-exclusive basis, and that they would pay O'Brien four percent of the purchase price as a commission, so long as the sellers netted $95,000 from the sale. In early September, 1985, the buyer learned that the property was listed for sale with O'Brien and expressed an interest in buying it. On September 12, 1985, the buyer submitted a written offer to purchase the property, accompanied by a $100 deposit. The offer described the property and stated a purchase price of $95,000. It set forth a schedule for payment of deposits and for a closing. It designated certain household items to be included in the sale and others to be excluded. It stated that the transaction was subject to the buyer's ability to obtain financing. Finally, it provided that the buyer would agree to sign the sellers' "usual purchase and sales agreement."

There was no mention in the offer form of the amount of O'Brien's commission or who would pay it. When the sellers signed the offer form on September 15, 1985, they were under the impression that the $95,000 purchase price was net of O'Brien's commission. O'Brien had told the sellers that his commission would be paid by the buyer, and they reasonably believed they would retain the full $95,000. O'Brien and the buyer's lawyer proceeded to draft a purchase and sale agreement. When a proposed agreement was presented to the sellers on September 20, 1985, they refused to sign it, and they returned the buyer's $100 deposit on September 24, 1985. The sellers rejected the agreement principally[2] because of the

---

[2] The defendants also objected to the provision in the purchase and sale agreement relating to (1) the status of the deposit, (2) the appliances to be

inclusion of a clause requiring them to pay O'Brien a $3,800 commission.

On October 15, 1985, the buyer brought this action for specific performance. The trial judge ruled that, due to the representations made by O'Brien to the sellers concerning the broker's fee, there was no "meeting of the minds" between the parties, there was no binding contract in the absence of a purchase and sale agreement satisfactory to all parties, and the sellers' rejection of the proposed agreement was not wrongful.

We recently discussed the legal consequences of written offers to purchase real estate. "To be sure, as the court observed in [*Rosenfield* v. *United States Trust Co.*, 290 Mass. 210 (1935)], language looking to execution of a final written agreement justifies a strong inference that significant items on the agenda of the transaction are still open and, hence, that the parties do not intend to be bound. . . . If, however, the parties have agreed upon all material terms, it may be inferred that the purpose of a final document which the parties agree to execute is to serve as a polished memorandum of an already binding contract." *Goren* v. *Royal Invs. Inc.*, 25 Mass. App. Ct. at 140 (citations omitted). Moreover, inclusion in such a document of language obligating the parties to sign something such as a "usual agreement" may counter any negative inference concerning the parties' intention to form a binding contract. See *Blomendale* v. *Imbrescia*, 25 Mass. App. Ct. at 145. The weighing of inferences, sometimes conflicting, based upon the circumstances, to determine whether a contract for the sale of real estate has come into existence usually raises a question to be resolved by the trier of fact. See *Kinchla* v. *Welsh*, 8 Mass. App. Ct. 367, 370 (1979).

The buyer's statement in the offer form of his willingness to sign the sellers' "usual purchase and sale agreement" did not, in the circumstances, create a compelling inference requiring the trial judge to decide in the buyer's favor. The sellers appar-

included in the sale, (3) the granting of easements, (4) the closing date, (5) the seller's remedies in the event of a breach by the buyer, (6) the representations relied on by the sellers, and (7) the conditioning of the sale on the buyer's obtaining financing at a certain fixed rate of interest.

ently had no usual form, and the negotiations for the agreement in fact took place between the broker and the buyer's attorney. See *Blomendale* v. *Imbrescia*, 25 Mass. App. Ct. at 145.

The offer form used by the parties did include most of the significant economic terms. The issue as to which the buyer contends that the trial judge erred is the significance of the form's silence with regard to payment of the broker's fee. There can be little doubt that the matter of the broker's fee was a significant economic factor and, therefore, material to the parties. See *Goren* v. *Royal Invs. Inc.*, 25 Mass. App. Ct. at 141. It is true, as the buyer argues, that the matter of a real estate broker's commission is ordinarily one between the seller and the broker, the usual rule being that, if the broker finds a customer for the property who is ready, willing, and able to purchase it on the terms fixed by the owner and who does purchase it, he is entitled to be paid a commission by the seller. See *Tristram's Landing, Inc.* v. *Wait*, 367 Mass. 622, 629 (1975). Thus, the absence of a reference in an offer form to payment of a broker's commission would not automatically prevent the document, if signed by the parties, from constituting an enforceable agreement.

This case is removed from the ordinary situation, however, by the finding that the sellers had been told by the broker, before they signed the preliminary offer form, that the buyer had agreed to pay the broker's commission and that the sellers would receive $95,000 net. The buyer apparently had no such intention. Thus, when the preliminary agreement was signed, there was no meeting of the minds. Compare *Vickery* v. *Ritchie*, 202 Mass. 247, 248-249 (1909). Although the buyer played no role in the deception, he knew that a broker was involved and would expect a fee. Normally the specifics regarding payment of the broker's fee, along with many other matters are worked out in the more detailed purchase and sale agreement. See Park & Park, Real Estate Law § 895 (2d ed. 1981). Indeed, the broker and the buyer's attorney proposed an agreement stipulating that the sellers were to pay a commission in the amount of $3,800. Although there was nothing improper in that proposal, it was not inevitable; it is not unheard of for parties to

such agreements to contract for the buyer to assume responsibility for the broker's commission. See, e.g., *Stein* v. *Chalet Susse Intl., Inc.*, 22 Mass. App. Ct. 174, 176 (1986).

At the time the parties signed the preliminary agreement, they had different understandings about the payment of the broker's commission. The next step in their negotiations, conducted not by the parties but by O'Brien and the buyer's lawyer, produced an expanded agenda of negotiable items, including the payment of the broker. See *Blomendale* v. *Imbrescia*, 25 Mass. App. Ct. at 147. When the sellers were presented with the proposed full-blown agreement, they had the right to reject it because it included material terms to which they had not previously agreed. The trial judge found that the matter of the broker's fee was not a pretext but was in fact the principal reason the sellers refused to sign the agreement. Contrast *Goren* v. *Royal Invs. Inc.*, 25 Mass. App. Ct. at 138 (the seller claimed that there was no "meeting of the minds" only after being offered a higher purchase price from a third party). Moreover, the sellers acted fairly and without delay in notifying the buyer and returning the deposit. Principles of equity, thus, do not require that the buyer receive specific performance.

We deal summarily with the buyer's remaining contentions. Evidence concerning the broker's statement to the sellers that the buyer agreed to pay the fee and that the price to the sellers would be $95,000 net was properly admitted on the factual issue of whether a binding agreement had been reached, and the parol evidence rule did not prevent the judge from considering it. In the absence of a complete transcript of a particular witness's testimony or an offer of proof, we cannot say it was error for the judge to exclude testimony as to the witness's reputation for truth and veracity.

*Judgment affirmed.*