CHARLES VICKERY *vs.* ROBERT L. WALTON & another. No. 88-P-61. February 15, 1989. *Real Property,* Purchase and sale agreement. *Contract,* What constitutes, Sale of real estate. *Practice, Civil,* Appeal.

Once again we are confronted with fallout from the use of a written offer to purchase form as a prelude to execution of an agreement to buy real estate. See *Goren* v. *Royal Invs. Inc.,* 25 Mass. App. Ct. 137, 140-143 (1987); *Blomendale* v. *Imbrescia,* 25 Mass. App. Ct. 144, 147 (1987); *Nelsen* v. *Rebello, ante* 270, 272-274 (1988).

The governing facts were found by a Superior Court judge who sat without jury. We flesh them out from undisputed material in the record. At the instigation of the plaintiff Charles Vickery, who desired to buy a dwelling house at 104 West Third Street in South Boston, a broker (Connolly) approached the defendants, the Waltons, who owned the property. The broker produced an "Offer to Purchase Real Estate" on a form published by the Greater Boston Real Estate Board (revised 1985), signed by the prospective buyer. The defendants countersigned the form, apparently on December 14, 1985. Among the business points upon which the one-page document touched were price, deposit, closing date, and a financing condition. Clauses three and six of the document read as follows: "3. The parties hereto shall, on or before 5:00 P.M. Dec. 27, 1985, execute the Standard Purchase and Sale Agreement recommended by the Greater Boston Real Estate Board or any form substantially similar thereto, which, when executed, shall be the agreement between the parties hereto. . . . 6. Time is of the essence hereof."

December 27, 1985, a Friday, came and went and the defendants, who had never met Vickery, received no purchase and sale agreement and no communication from Vickery or from the broker. Vickery claims to have signed a purchase and sale agreement on December 27 at the office of a co-broker whom the Waltons had never met. After December 27, Connolly called Robert Walton to say he had a purchase and sale agreement to deliver to him and his wife, but they declined to receive or sign it. "I did not want to deal with these people anymore," Robert Walton testified, "because they fiddled me around, and fiddled me around. . . ." A year later, the Waltons sold the locus to a third party. The plaintiff contends that the offer to

purchase document constituted a binding agreement and that the execution of a purchase and sale agreement was no more than a formality. See *Goren* v. *Royal Invs. Inc.*, 25 Mass. App. Ct. at 141-142, and cases there cited. The Superior Court judge ruled that the failure of the plaintiff to proffer a purchase and sale agreement by the deadline date set in the offer form relieved the sellers of further obligations. Judgment entered for the defendants, and the plaintiff Vickery has appealed.[1]

1. *Inadequacy of record appendix.* Whether a preliminary agreement which contemplates execution of a further document represents an understanding of the parties on all essential terms cannot be read from the text of the preliminary paper alone. The provisions of the subsequent agreement, or subsequent events, may expose disagreement between the parties about significant business terms. See *Blomendale* v. *Imbrescia*, 25 Mass. App. Ct. at 146-147; *Nelsen* v. *Rebello, ante* at 273-274; *Hamad* v. *Manuel, ante* 966, 967 (1988). There is absent from the record appendix any information about the form or content of such purchase agreement as may have been proffered to the Waltons, let alone a copy of it. Out of seventy-two pages of trial transcript, Vickery, the plaintiff-appellant, has chosen to reproduce eleven in the record appendix. To be sure, appellants, on pain of incurring judicial wrath, should avoid indiscriminate reproduction of a large trial transcript, but here the entire transcript was small and the material furnished in the record appendix is too sketchy to review the findings and conclusion of the trial judge. We are not bound to look beyond the record appendix to the complete record made before the trial court. *Kunen* v. *First Agricultural Natl. Bank*, 6 Mass. App. Ct. 684, 690-691 (1978).

A central finding which Vickery challenges on appeal is that "[n]either Vickery nor Connolly, nor anyone on behalf of Century 21/Old Harbor Realty Corp. [the co-broker] contacted the Waltons or took any action toward execution of the purchase and sale agreement on or before December 27, 1985." In order to review findings, we must have a record of the evidence before the judge. *Powers* v. *Leno*, 24 Mass. App. Ct. 381, 385 (1987). *Goldhor* v. *Hampshire College*, 25 Mass. App. Ct. 716, 724-725 (1988). That pertinent material is absent from the record appendix.

For the reason, if no other, that the record appendix provides an inadequate basis for review, the judgment may be affirmed. Parenthetically, the transcript excerpts in the record appendix were so peculiarly fragmented that we examined the entire transcript. It provides ample support for the judge's central finding.

2. *Consequence of deadline.* When parties agree in writing that time is to be of the essence, courts will hold parties to the deadlines they have imposed upon themselves. *Preferred Underwriters, Inc.* v. *New York, N.H.*

---

[1] Connolly and a co-broker joined in the action below as plaintiffs but have not appealed from the judgment.

& H. R.R., 243 Mass. 457 (1923). *Kurland* v. *Massachusetts Amusement Corp.*, 307 Mass. 131, 137-138 (1940). *Devine* v. *Williams Bros.*, 4 Mass. App. Ct. 816 (1976). Contrast *Dennett* v. *Norwood Housing Assn.*, 241 Mass. 516, 520 (1922); *Limpus* v. *Armstrong*, 3 Mass. App. Ct. 19, 21 (1975). Compare *Cadillac Auto. Co. of Boston* v. *Stout*, 20 Mass. App. Ct. 906, 907 (1985). Parties in the position of the sellers in this case were entitled to know by a date certain whether their deal was on or off. There is no suggestion that any agreement, consistent with the offer to purchase or otherwise, was proffered to the sellers for signature before the deadline date and that they rejected it. Unless one were to treat the provision regarding execution of a purchase and sale agreement as surplusage, the failure by the party seeking performance to proffer an agreement before the deadline for its execution relieves the other of obligation. As we have indicated, the provision in the offer form for a subsequent agreement is not surplusage, because the drafting of the later agreement sometimes exposes areas of significant disagreement about terms.

*Judgment affirmed.*

*Donald J. Hubbard* for the plaintiff.                                    ∘