JOHN J. McCARTHY, JR. *vs.* ANN G. TOBIN; ROBERT DiMINICO
& another,[1] interveners.

No. 96-P-1680.

Suffolk. December 18, 1997. - February 11, 1998.

Present: JACOBS, GILLERMAN, & SPINA, JJ.

Further appellate review granted, 427 Mass. 1105 (1998).

*Contract,* Sale of real estate, Construction of contract, Offer and acceptance.
   *Real Property,* Sale, Purchase and sale agreement.

An offer to purchase real estate, signed by both the prospective buyer and the
   seller, which stated all the terms and conditions material to the
   contemplated transaction, and which stated on its face that the offer created
   "binding obligations," bound the parties contractually, notwithstanding the
   language in the offer contemplating the execution of a later, more formal
   purchase and sale agreement, and the buyer was entitled to entry of sum-
   mary judgment on his claim. [277-279]

CIVIL ACTION commenced in the Superior Court Department on
September 25, 1995.

Motions for summary judgment and for reconsideration were
heard by *Peter M. Lauriat,* J., and entry of separate and final
judgment was ordered by *E. Susan Garsh,* J.

*J. Gavin Cockfield* for the plaintiff.

*Richard A. Oetheimer* for the defendant.

*Shepard Davidson* for the interveners.

GILLERMAN, J. The devil that lurks in offers to purchase real
estate and like instruments, which contemplate further documen-
tation regarding the same subject matter,[2] once again has
triumphed. Here the parties — the buyers (McCarthy and the Di-

---

[1]Juliann DiMinico.

[2]An early leading case is *Rosenfield* v. *United States Trust Co.,* 290 Mass.
210 (1935). The court, sustaining a directed verdict for the defendant,
concluded, as matter of law, that the preliminary agreement was not binding
because the surrounding circumstances revealed a "lack of an intention to be
bound except upon the execution of a formal written instrument." *Id.* at 218.

Minicos) and the seller (Tobin) — have been in litigation since mid-1995; the subject is a condominium unit at Burroughs Wharf in Boston (premises).

A judge of the Superior Court allowed the seller Tobin's motion for summary judgment and also allowed the interveners' (DiMinicos') motion for partial summary judgment in so far as it requested the declaration that Tobin had no obligation to sell to McCarthy and that McCarthy had no right to buy the premises. He denied McCarthy's motion for summary judgment. We conclude that the judgment must be vacated and that McCarthy is entitled to the allowance of his motion for summary judgment.

Each of the parties filed motions for summary judgment based on essentially the same facts. The judge stated these undisputed facts in his memorandum of decision. See *Blomendale* v. *Imbrescia*, 25 Mass. App. Ct. 144, 144 (1987). We summarize those facts.

On August 9, 1995, McCarthy executed an "Offer To Purchase Real Estate" (OTP) on a printed form published in 1994 by the Greater Boston Real Estate Board. The completed form recites that McCarthy offers to purchase the premises for a total purchase price of $526,000. Tobin's real estate agent accepted a $5,000 deposit on August 10, 1995, and Tobin signed and delivered the OTP on August 11, 1995.

The OTP, as executed by Tobin and McCarthy, includes the material terms and conditions of an offer to purchase residential real estate: a description of the property to be sold, including one parking space; the purchase price; the deposit and the conditions under which the deposit becomes the property of the seller or the buyer, as the case may be; the expiration date of the offer; the manner in which the offer may be accepted; the nature of the title to be conveyed; the identification of items of personal property included, and not included, in the sale; and the time and place for the delivery of the deed.

The OTP also includes several additional provisions which are the subject of this dispute.

Paragraph 3 provides that the parties "shall, on or before 5 P.M. August 16, 1995 execute the applicable Standard Form Purchase and Sale Agreement recommended by the Greater Boston Real Estate Board . . . which, when executed, shall be the agreement between the parties hereto."

Paragraph 6 states, "Time is of the essence hereof."

Paragraph 7 provides for the insertion of "Additional terms and conditions." There follows a typewritten insertion which states, "Subject to a Purchase and Sale Agreement satisfactory to Buyer and Seller."[3]

An unnumbered paragraph, immediately above the signature lines, states: "NOTICE: This is a legal document that creates binding obligations. If not understood, consult an attorney."

It was not until *after* 5 P.M. on August 16, 1995, that Tobin's attorney, Mr. Craig Gilmartin, faxed the first draft of a purchase and sale agreement to McCarthy's attorney, Mr. Bradley Pinta.[4] Mr. Gilmartin's delay in preparing the draft obviously made it impossible for Mr. Pinta to respond before 5 P.M. August 16, 1995, as required by the OTP, with the consequence that Mr. Gilmartin, acting for his client (or so it could reasonably be understood), had waived insistence on the par. 6 provision that "Time is of the essence hereof." See *Church of God in Christ, Inc.* v. *Congregation Kehillath Jacob*, 3 Mass. App. Ct. 420, 424 (1975).

Mr. Pinta responded by facsimile five days later on August 21, 1995, proposing various changes and additions such as the identification of the parking space referred to in the OTP, recitation of the amount of the broker's fee, provisions regarding casualty prior to sale, and other items which were customary or merely "ministerial and nonessential terms of the bargain." See *Goren* v. *Royal Investments Inc.*, 25 Mass. App. Ct. 137, 139 (1987). Contrast *Blomendale* v. *Imbrescia*, 25 Mass. App. Ct. at 146-147.

Counsel discussed revisions to the draft agreement on August 22, 1995. No mention was made of the August 16 date, and there was no discussion of any extension of that date.

Mr. Gilmartin sent Mr. Pinta a second draft of the agreement on August 23, 1995. It did not include a provision regarding a deadline for execution of the purchase and sale agreement.

Mr. Pinta sent the second draft to McCarthy on August 24, and on August 25 Mr. Pinta called Mr. Gilmartin and told him that the agreement was acceptable, that McCarthy would sign it,

---

[3]The record does not reveal the author of the "Subject to" clause, nor the circumstances of its creation.

[4]There is nothing in the record to suggest that Mr. Pinta was assigned responsibility for the preparation of the first draft of the purchase and sale agreement.

and that the agreement would be delivered to Mr. Gilmartin on Monday, August 28, 1995.[5]

On Saturday, August 26, the following occurred: (i) McCarthy signed the agreement and arranged for its delivery on Monday morning and (ii) Tobin signed a second OTP with the DiMinicos who had offered to pay an additional $50,000 for the premises. Tobin was acting on the advice of a second real estate broker; it does not appear that Mr. Gilmartin was consulted.

On August 28, 1995, Tobin's first broker received the executed agreement and the additional deposit required by the agreement. On the same day McCarthy's check was deposited by the broker and the signed agreement was delivered to Mr. Gilmartin. It was not until the next day that Mr. Gilmartin told Mr. Pinta that the agreement was late and that Tobin had signed a second OTP, this one with the DiMinicos.

The purchase and sale agreement between Tobin and the DiMinicos was signed sometime in September, 1995. On September 25, 1995, before the DiMinicos closed on their purchase, McCarthy commenced this action, and the DiMinicos intervened. The motions for summary judgment were filed February 8, 1996.

*Discussion.* The familiar issue is whether, on these undisputed facts, Tobin and McCarthy were bound by the OTP they both had signed, or whether they were not bound until they executed the contemplated purchase and sale agreement.[6] Phrased differently, was the OTP a "firm offer" or not? See *Schwanbeck* v. *Federal-Mogul Corp.*, 412 Mass. 703, 707 n.4 (1992) (a "firm offer" is one that would be enforceable on the offeree's manifestation of acceptance of the terms of the offer).

It is "elementary that an unambiguous agreement must be enforced according to its terms." *Schwanbeck, supra* at 706. The problem in this case is not the ambiguity of the terms of

[5]The judge noted that the attorneys quibbled in their deposition testimony about the content of the telephone conversation on August 25. Mr. Pinta's version is that Mr. Gilmartin assented to delivery of the signed agreement on August 28. Mr. Gilmartin's version is that he only agreed to receive the copies on August 28, and that the broker would receive a signed copy on August 25. Nothing turns on this dispute.

[6]Where the material facts are undisputed, the document in dispute is before us, and each of the parties in the court below moved for summary judgment on those facts, the issue is one of law, not fact. See *Rosenfield* v. *United States Trust Co.*, 290 Mass. 210, 218 (1935).

the OTP, for there is none.[7] The difficulty is that the OTP is self-contradictory because of two critical clauses.

On the one hand, par. 3 looks to the execution of a purchase and sale agreement, and there are cases, such as *Rosenfield* v. *United States Trust Co.*, 290 Mass. 210 (1935) (see note 2, *supra*), that have held that a clause that expressly contemplates the execution of a later, formal purchase and sale agreement reveals an intention not to be bound until the subsequent agreement is executed. If the clause that refers to a later agreement includes the phrase "satisfactory to both parties," we have said, in obiter dictum, that such a phrase carries "special weight." See *Levenson* v. *L.M.I. Realty Corp.*, 31 Mass. App. Ct. 127, 130-131 (1991) (holding, however, that because the parties did not intend the preliminary document to be an offer, the document was not binding).

There is also authority, it must be noted, such as *Goren* v. *Royal Investments Inc.*, 25 Mass. App. Ct. at 141, where we have held that a preliminary agreement *is* binding upon the parties notwithstanding the inclusion of the sentence, "A mutually acceptable Purchase and Sale Agreement shall be executed within four weeks of acceptance of this offer." *Id.* at 138. Decisive in *Goren* was the fact that the judge found that the parties intended to be bound by the preliminary agreement — a finding that we understood to rest on the pivotal fact that "all significant economic issues were resolved in the preliminary agreement." *Id.* at 141, and at 140 and 142, where the cases are collected.

On the other hand, this OTP includes a provision not discussed, so far as we are aware, in any of the cases. That clause, which is the final provision in the OTP and immediately precedes the signature line, puts the parties on "NOTICE" that the OTP "is a legal document that creates binding obligations. If not understood, consult an attorney." That provision must be taken to mean what it says: the OTP, when completed and signed by the buyer, is intended to be a firm offer, and, when countersigned and delivered by the seller, the offer is accepted and the OTP may become a contract binding upon the parties. McCarthy and Tobin each signed and delivered a copy of the OTP.

---

[7] "A term is ambiguous only if it is susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one." *Citation Ins. Co.* v. *Gomez*, 426 Mass. 379, 381 (1998).

While it is not entirely clear what the drafter (identity unknown) had in mind by the insertion of the "subject to" clause in par. 7, that obscurity is not decisive in this case. When the parties have signed an OTP that states all the terms and conditions that are material to the contemplated transaction,[8] and on its face states the understanding that the instrument creates "binding obligations," we hold the parties to the conclusion that reasonably intelligent persons would reach in the circumstances. See *Citation Ins. Co.* v. *Gomez*, 426 Mass. 379, 381 (1998) (a "reasonably intelligent person" standard is appropriate to resolve interpretive problems regarding contract terms). That conclusion is that a binding agreement has been reached.

Tobin and the DiMinicos both rely heavily on the deposition testimony of McCarthy, where he testified, "If we didn't sign the [purchase and sale] agreement, the deal would be off."[9] The argument fails because both Tobin and the DiMinicos ignore the second sentence of McCarthy's answer: "If *both* parties didn't." (Emphasis added). The entire answer of McCarthy makes it clear that only the joint agreement of the parties could work an abandonment of the agreed sale.[10]

The final judgment in favor of Tobin and the DiMinicos is vacated. The case is remanded to the Superior Court for entry of judgment in favor of McCarthy.

*So ordered.*

---

[8]That Mr. Pinta and Mr. Gilmartin, and their clients, so quickly and easily came to agreement on the content of the contemplated purchase and sale agreement reinforces that conclusion.

[9]The DiMinicos state in their brief that we "need look no further" than this deposition testimony. Tobin agrees that the deposition testimony "unquestionably establishes" that McCarthy did not intend to be bound by the OTP.

[10]As we wrote in *Goren*, 25 Mass. App. Ct. at 142-143, a provision that seeks to avoid having an OTP metamorphose into a contract "should speak plainly," e.g.,

"THE PURPOSE OF THIS DOCUMENT IS TO MEMORIALIZE CERTAIN BUSINESS POINTS. THE PARTIES MUTUALLY ACKNOWLEDGE THAT THEIR AGREEMENT IS QUALIFIED AND THAT THEY, THEREFORE, CONTEMPLATE THE DRAFTING AND EXECUTION OF A MORE DETAILED AGREEMENT. THEY INTEND TO BE BOUND ONLY BY THE EXECUTION OF SUCH AN AGREEMENT AND NOT BY THIS PRELIMINARY DOCUMENT."
*Id.* at 143.