NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-799

R. SCOTT MURRAY & another[1]

vs.

STEVEN A. MEYER[2] & others.[3]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiffs brought suit for specific performance and damages, seeking to enforce an offer they made to purchase a property in Mashpee.  Concluding that the offer did not create a binding agreement, a Superior Court judge granted summary judgment in favor of the defendants.  The plaintiffs appeal, arguing that there is a genuinely disputed issue of material

---

[1] 149 Popponesset Island Real Estate, LLC.

[2] Individually and as personal representative of the estate of Natalie Rubin.

[3] Jenna Harrington and Sassoon Cymrot Law, LLC.

fact whether the parties intended to be bound by the offer.[4]  We affirm.

Background.  We summarize the essential facts, as taken from the parties' statements of undisputed fact and from the undisputed documents in the record.  We reserve discussion of other facts as they become pertinent to our analysis.

The property at issue was an asset of the estate of Natalie Rubin (estate).  In early 2021 defendant Steven A. Meyer, the estate's personal representative, hired a broker to sell the property.  The MLS (multiple listing service) sheet noted that the "[p]roperty is part of an estate."

On March 13, 2021, plaintiff R. Scott Murray visited the property with his broker, Marion Oost-Lievense, and then made an offer to purchase it for $2,500,000.[5]  The offer, which was submitted on a standard form created by the Massachusetts Association of Realtors, set out the purchase price, the deposit requirements, the duration of the offer, and the closing date of May 7, 2021, among other terms.  In addition, paragraph 4 of the

---

[4] The operative complaint contains eleven counts, but only three are at issue on appeal:  Count I for breach of contract, Count II for breach of the implied covenant of good faith and fair dealing, and Count IX for specific performance.

[5] Murray signed the offer on behalf of Scott Murray Popponesset Real Estate Trust.  According to the complaint, this was "a placeholder" for plaintiff 149 Popponesset Island Real Estate, LLC, which "had not yet been formed."

2

offer provided that the parties "shall on or before . . . March 23, 2021 execute the Standard Purchase and Sale Agreement of the MASSACHUSETTS ASSOCIATION OF REALTORS or substantial equivalent which, when executed, shall become the entire agreement between the parties."  When Oost-Lievense prepared the offer on behalf of Murray, she was aware that the property was part of an estate.  She also told Murray on the day he made the offer that the property would continue to be shown; Murray believed, however, that "nobody else would pay more than [his] price."

Within a day, Meyer sent the offer back to Murray with the following change to paragraph 4:  he crossed out "the Standard" before "Purchase and Sale Agreement" and handwrote "mutually agreeable" above it.  Meyer initialed the change and signed the offer on behalf of the estate.  Murray never initialed the change, nor did he countersign the document sent back by Meyer.

On March 15, 2021, Murray visited the property a second time with Oost-Lievense and the estate's broker.  As they were walking out, Oost-Lievense told Murray again that the property would continue to be shown.  Two days later, Oost-Lievense sent an e-mail message to Murray stating, "There have been other offers, but the good news is that [one of the heirs] liked you very much. . . .  It is these small things that often make a difference, as you know.  I know it is not easy being patient, but we need to be for now."  Murray replied, "Sounds good."

3

Later that same day, Oost-Lievense called Murray and told him that the estate had received a higher offer and was giving him the opportunity to counter it. Murray did not have a good reaction and was "very angry."

On March 18, 2021, Meyer sent a draft purchase and sale agreement to Murray. Included in the draft was a provision (paragraph 51) addressing Meyer's fiduciary obligation to the estate to accept higher offers up to the time of closing:

> "Fiduciary Obligations: BUYER agrees that Seller's obligations under this Agreement are conditioned upon SELLER receiving prior to the closing no offer to purchase the Premises, which in SELLER's sole judgment, is at a price higher or upon terms more favorable than specified herein. If SELLER receives such an offer, then, at SELLER's option, all deposits hereunder shall be refunded, and this Agreement shall be null and void and without further recourse to the parties hereto. SELLER agrees that SELLER shall not solicit any additional offers for the purchase of the Premises. For purposes of this Agreement, publication of the time and place of hearings relative to obtaining the License, as provided by law, shall not constitute solicitation of additional offers."

In addition, paragraph 52 conditioned the sale on the seller's obtaining a license to sell from the Probate and Family Court, if the seller "deem[ed] it advisable."

After Murray conveyed to his attorney that he would not agree to paragraphs 51 and 52, his attorney deleted them from the draft and sent a revised purchase and sale agreement to the estate's attorney. The estate's attorney replied that Meyer would not sign the agreement unless paragraphs 51 and 52

4

remained, citing Meyer's fiduciary obligations and noting that the MLS listing disclosed that the property was part of an estate. On March 23, 2021, Murray signed the purchase and sale agreement, with paragraphs 51 and 52 included.

Meyer never countersigned the purchase and sale agreement. Instead, later on March 23, he notified Murray that he had received higher offers and did not think it advisable to sign the agreement only to terminate it later. The next day the estate's attorney sent an e-mail message to the interested buyers, including Murray, stating that the estate would accept offers until March 25, at which point Meyer would present them to the heirs for input. Murray made an offer, but defendant Jenna Harrington was the successful bidder. Meyer and Harrington then executed a purchase and sale agreement, which reflected a purchase price of $2,975,000.

Discussion. We review a grant of summary judgment de novo. See Boazova v. Safety Ins. Co., 462 Mass. 346, 350 (2012). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, raises no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See Carey v. New England Organ Bank, 446 Mass. 270, 278 (2006). "Only those facts that, if true, provide a basis for a reasonable jury to find for a party are material." Id. Where, as here, the nonmoving party will

5

have the burden of proof at trial, the moving party can prevail on summary judgment by demonstrating that the nonmoving party "has no reasonable expectation of proving an essential element of that party's case."  Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).

The question before us is whether a reasonable jury could find that a binding agreement was created when Meyer signed Murray's offer to purchase, but only after altering it to require the future execution of a "mutually agreeable" purchase and sale agreement.  "Normally the fact that parties contemplate the execution of a final written agreement justifies a strong inference that the parties do not intend to be bound by earlier negotiations or agreements until the final terms are settled." Rosenfield v. United States Trust Co., 290 Mass. 210, 216 (1935).  This "fact does not conclusively establish such intention," however.  Id.  See McCarthy v. Tobin, 429 Mass. 84, 87 (1999) ("The controlling fact is the intention of the parties").  Rather, if the parties have agreed on "all the material terms which are to be incorporated into a future writing," it can be inferred that the future writing is "a mere memorial" of the agreement, "which is already final by the earlier mutual assent of the parties to those terms." Rosenfield, supra.  On the other hand, if the parties have not agreed on all the material terms, this "may not merely be

6

evidence of the intent of the parties to be bound only in the future, but may prevent any rights and or obligations from arising on either side for lack of a completed contract."  Id.

Here, by striking "the Standard" before "Purchase and Sale Agreement," replacing it in handwriting with "mutually agreeable," and initialing the change in the offer, Meyer signaled his intent not to be bound until the execution of a more formal agreement.  See Rosenfield, 290 Mass. at 218 (defendants' refusal to enter into "short form of agreement" and insistence on having lease drawn showed that "parties did not intend to be bound until the perfected lease was executed"); Levenson v. LMI Realty Corp., 31 Mass. App. Ct. 127, 129, 131 (1991) (addition of "satisfactory to both parties," after "we will enter into a purchase and sale agreement forthwith," "carried special weight by virtue of having been inserted in writing in a typewritten letter," and its purpose "was to ensure that [the seller] would not be bound until [his attorney] had reviewed the purchase and sale agreement, strongly suggesting, in turn, that that was to be the decisive document").  Murray never initialed the change, nor did he countersign the document returned by Meyer.  Because Meyer's acceptance of Murray's offer was not unconditional but "in the nature of a new offer, or counter proposal," Murray's failure to accept Meyer's counteroffer meant that the parties never entered into a binding

7

contract.  Lawrence v. Rosenberg, 238 Mass. 138, 141 (1921).

See Moss v. Old Colony Trust Co., 246 Mass. 139, 148 (1923) ("an offer must be accepted in the terms in which it is made in order to become a binding contract, and . . . a conditional acceptance or one that varies from the offer in any substantial respect is in effect a rejection and is the equivalent of a new proposition").

Moreover, even had Murray accepted the counteroffer, the undisputed evidence in the record shows that the parties had not agreed on all the material terms that were to be incorporated into a future purchase and sale agreement.  The plaintiffs do not contest that paragraph 51 of the draft purchase and sale agreement, concerning Meyer's fiduciary duties to the estate, was material.[6]  When the offers were exchanged, there was no meeting of the minds on that issue, as evidenced by Murray's initial rejection of paragraph 51 and Meyer's response that he would not sign a purchase and sale agreement without paragraph 51 included.  This demonstrates that the parties "had reached the stage of 'imperfect negotiation' and not of a completed contract."  Rosenfield, 290 Mass. at 217, quoting Kaufman v. Lennox, 265 Mass. 487, 489 (1929).  See Germagian v. Berrini, 60

---

[6] We therefore need not decide whether paragraph 52 was material, an issue that the parties do not address in any detail in their briefs.

8

Mass. App. Ct. 456, 457, 460 (2004) (seller's "addition of the words 'on or before' to the closing date contained in the offer" -- which he initialed but buyer did not initial -- and buyer's "subsequent request to extend the closing date" showed that parties did not "agree in the offer upon an essential term"); Nelsen v. Rebello, 26 Mass. App. Ct. 270, 274 (1988) (sellers had right to reject purchase and sale agreement because it included terms about payment of broker's commission "to which they had not previously agreed"); Blomendale v. Imbrescia, 25 Mass. App. Ct. 144, 147 (1987) (buyer's introduction of "new elements which had not been discussed, let alone agreed upon" demonstrated that "parties did not intend to be bound by the preliminary document").

The facts of this case are distinguishable from those in McCarthy, 429 Mass. 84, on which the plaintiffs heavily rely. In McCarthy, although the offer to purchase (which was signed by both parties) contemplated the future execution of a "satisfactory" purchase and sale agreement, id. at 85, the court held that the offer was binding because the parties had already agreed on all material terms of the transaction. See id. at 87-88. Numerous cases have since distinguished McCarthy on the ground that it was "manifest" that the parties there intended to be bound by the terms of the offer. Battle v. Howard, 489 Mass. 480, 492 (2022). See, e.g., Walsh v. Morrissey, 63 Mass. App.

9

Ct. 916, 917 (2005); Coldwell Banker/Hunneman v. Shostack, 62 Mass. App. Ct. 635, 639 (2004); Germagian, 60 Mass. App. Ct. at 459-460. For example, in Battle, supra, the court held, in the context of a partition proceeding, that the commissioner's acceptance of a buyer's offer did not create binding obligations where any purchase and sale agreement would have been subject to court approval and the parties' right to object, and the commissioner reported that he accepted the offer "subject to approval by th[e] Court." The court reasoned that these facts "did not evidence the same definite intent to be bound as the acceptance of the firm offer in McCarthy." Id. at 493. Similarly, here, Meyer's belief that he had a fiduciary duty to the estate to accept the best offer for the property demonstrated his lack of intent to be bound by Murray's offer.

In arguing otherwise, the plaintiffs point to statements that Meyer made to third parties suggesting that he believed he was bound by the offer.[7] It is undisputed, however, that Murray was not aware of these statements until after he sued and so

---

[7] In particular, the plaintiffs point to Meyer's statement to one of the heirs, who was living at the property, that Meyer had "accepted an unconditional offer to purchase the property"; his statement to the same heir that "a mutually agreed upon offer is a binding contract . . . regardless of any issues arising under a subsequent Purchase and Sale Agreement"; and his instruction to the estate's broker to tell a prospective buyer that he had "obligations associated with the accepted initial offer."

could not have appreciated them as manifestations of Meyer's assent. See Restatement (Second) of Contracts § 19(2) (1981) ("The conduct of a party is not effective as a manifestation of his assent unless he . . . knows or has reason to know that the other party may infer from his conduct that he assents"). And even putting this aside, statements of assent do not "bar a defendant from asserting that he had made no completed agreement" if the facts show that "all material matters had not been agreed upon." Rosenfield, 290 Mass. at 217-218. Thus, in Rosenfield, the court held that statements by a defendant to the plaintiffs that the "deal was closed" and "[t]hat is all settled" did not give rise to a binding contract given the undisputed fact that the parties had not agreed on several material terms. Id. See Kaufman v. Lennox, 265 Mass. 487, 488 (1929), quoting Knowles v. Griswold, 252 Mass. 172, 175 (1925) (plaintiff's "case [was] not strengthened by the allegation as to the expression of satisfaction by [defendant]" because "[i]t is essential to the existence of a contract that its nature and the extent of its obligations be certain"). Likewise, Meyer's statements do not create a genuine dispute as to whether Murray's offer was binding where the undisputed evidence shows that the parties had not agreed on all the material terms governing the purchase and sale. See Rosenfield, supra at 218 (insufficient evidence to submit case to jury, even drawing

11

"every assumption in favor of the plaintiffs of which the evidence is fairly susceptible").

Relatedly, the plaintiffs argue that, viewing the evidence in the light most favorable to them, a reasonable jury could conclude that "Meyer had 'seller's remorse' and concocted his story that he always intended to require Paragraph 51 [l]anguage in the eventual purchase and sale agreement as a way to try to undo his contractual obligations to [Murray]."  We agree that Meyer could have made his intent plainer in the offer by including the paragraph 51 language or a proviso similar to what we recommended in Goren v. Royal Invs., Inc., 25 Mass. App. Ct. 137, 142-143 (1987), which we set out in the margin.[8]  But unlike in Goren, where the seller was found to have invented reasons to back out of the agreement upon receiving a higher offer, id. at 139, the evidence here shows that Meyer always intended to entertain other offers and that Murray was aware of this.  As mentioned, the MLS listing stated that the property was part of an estate, and Oost-Lievense informed Murray when he submitted his offer and afterwards that the property would continue to be

_____

[8] "The purpose of this document is to memorialize certain business points.  The parties mutually acknowledge that their agreement is qualified and that they, therefore, contemplate the drafting and execution of a more detailed agreement.  They intend to be bound only by the execution of such an agreement and not by this preliminary document."  Goren, 25 Mass. App. Ct. at 143.

12

shown.  Murray told Oost-Lievense that he believed no one would make an offer higher than his, demonstrating that he knew that Meyer would entertain other offers.  Also, a few days after Murray made his offer, Oost-Lievense told him that the estate had received other offers and that they needed to be patient, to which Murray replied, "Sounds good."  These facts are undisputed and show that Meyer, who was acting not in his personal interest but as the estate's personal representative, did not concoct paragraph 51 as a way to renege on contractual obligations he owed to Murray.  See Nelson, 26 Mass. App. Ct. at 274 ("matter of the broker's fee was not a pretext but was in fact the principal reason the sellers refused to sign the agreement").

In sum, we conclude that there is no genuine issue as to any material fact, that the parties did not reach a meeting of the minds on all essential terms of the transaction, and that they therefore never entered into a binding agreement as a matter of law.  See Coldwell Banker/Hunneman, 62 Mass. App. Ct.

at 640 ("The summary judgment materials show that the [disputed] clause was material as matter of law").  Summary judgment for the defendants was thus proper.[9,10]

Judgment affirmed.

By the Court (Vuono, Shin & Toone, JJ.[11]),

Clerk

Entered:  June 24, 2024.

---

[9] To the extent we have not specifically addressed any of the plaintiffs' arguments, we have considered all of them and see no basis on which to disturb the judgment.

[10] Meyer's request for attorney's fees is denied.

[11] The panelists are listed in order of seniority.

14