APPEALS COURT 
 
 GREGORY McCARTHY vs. JACOB F. YOUNG, THIRD, trustee,[1] & another[2]

 
 Docket:
 23-P-1124
 
 
 Dates:
 September 13, 2024 - January 21, 2025
 
 
 Present:
 Meade, Hershfang, & Toone, JJ.
 
 
 County:
 Suffolk
 

 
 Keywords:
 Contract, Sale of real estate, Offer and acceptance, Specific performance. Real Property, Purchase and sale agreement, Sale, Specific performance, Easement. Sale, Real estate. Easement. Lis Pendens. Practice, Civil, Summary judgment, Motion to dismiss.
 
 

             Civil action commenced in the Land Court Department on February 23, 2022.
            A special motion to dismiss was heard by Michael D. Vhay, J., and the case was also heard by him on motions for summary judgment.
            Robert W. Stetson for the defendants.
            Scott J. Clifford for the plaintiff.
            TOONE, J.  The plaintiff, Gregory McCarthy (buyer), brought this action against the defendants, Jacob F. Young, III, and Katherine Anderson Young in their capacities as trustees of the Nantucket Sound Trust (sellers), regarding a property in Charlestown (property).  The buyer sued the sellers for breach of contract and violation of the implied covenant of good faith and fair dealing and sought specific performance of the sale of the property as well as a declaratory judgment in his favor.  Even though the parties failed to execute a purchase and sale agreement, the judge ordered the sellers to convey the property pursuant to the terms of the offer to purchase (OTP), as amended by a provision in a draft purchase and sale agreement establishing an easement over the property for the benefit of the sellers.  Because the OTP was not enforceable, we reverse the final judgment.
            Background.  The following facts are undisputed.  On January 10, 2022, the buyer submitted an OTP to the sellers.  The OTP stated a purchase price of $850,000 with no financing contingencies and required the buyer to pay a $1,000 deposit.  It also required the parties to execute a standard purchase and sale agreement by January 19.  The closing was scheduled for February 16.  The OTP stated that it was a "legal document that creates binding obligations," and that "[t]ime is of the essence hereof."
            The sellers are a married couple and are cotrustees of the trust that holds the property.[3]  The parties agree that both the husband and wife needed to sign the OTP for it to take effect.  On January 11, the wife forwarded the OTP to their attorney for review.  The husband signed the OTP at 7:48 A.M. on January 12.  At 9:18 A.M. that same day, the sellers' attorney advised the sellers and their real estate broker that they needed to reserve a maintenance easement on the property so that they could repair an abutting property they owned.  The sellers' broker sent the buyer's broker a text message at 9:25 A.M. stating that there "will be language in the [purchase and sale agreement] regarding" the maintenance easement and that it "[w]ould be good for [the buyer] to know that now so it's not a problem at [purchase and sale agreement] time."  The text message further stated that the seller "will reserve a maintenance easement in the purchase and sale agreement and deed to be able to repair the abutting building . . . There is not enough space between the [abutting] building and [the property's] boundary line to erect scaffolding or perform usual building maintenance."  Within minutes, the buyer's broker informed his client about the requested easement.  The buyer understood the easement to be "a significant and material term" of the sale, because the lots were small and if the easement were too wide, he could not proceed with his development plans for the property.  After the buyer asked his broker about the size and duration of the proposed easement, the broker could not answer but suggested "letting the attorneys work that out since anything 'broker to broker' will not be binding."  The buyer responded with a "thumbs up" emoji and paid the deposit the following day, January 13.  The wife signed the OTP on January 14.
            Even though the deadline under the OTP to finalize the purchase and sale agreement was January 19, the parties continued to negotiate its terms after that date passed.  On January 25, the buyer's attorney informed the seller's attorney that the buyer would accept a three-foot easement, and he sent a revised draft of the purchase and sale agreement that included a reservation of rights creating the easement.  On January 26, the sellers' attorney sent an e-mail message to the buyer's attorney to clarify that they needed "a brief period to use more of the land than the 3 feet accommodated by the easement" in order for a truck to bring in roofing and siding materials for the adjacent property.  After the sellers proposed a temporary license to authorize the truck's entry, which the buyer declined, the seller's attorney stated that they would "make other arrangements."
            Although the buyer's attorney indicated on the evening of January 27 that the updated purchase and sale agreement was ready to be signed, the buyer did not immediately sign it.  On the following evening, the sellers' broker sent an e-mail message to the buyer's broker asking whether the buyer intended to sign, setting a deadline of 2 P.M. on January 29 for receipt of the required additional deposit, and stating that the sellers needed "to go to the other backup offers after tomorrow if we don't have signature."  Although the buyer's broker responded that the buyer still intended to sign, the buyer did not sign or tender the deposit.  Given the buyer's inaction, the sellers' attorney sent an e-mail message at 2:13 P.M. on January 29 stating, "It appears that your client changed his mind about buying [the property].  Please be advised that all negotiations and discussion have ended.  Neither of the parties have any obligations to the other regarding the purchase and sale of the property."
            On January 30, the buyer's attorney sent an e-mail message stating that the delays resulted from issues raised by the sellers and that "[t]he buyer is ready to sign and deliver the deposit tomorrow with a closing date of February 23rd."  The sellers sent a letter by e-mail on February 1 rejecting the buyer's proposal to extend the closing deadline, asserting that the OTP had expired, and refusing to move forward.[4]
            On February 9, the buyer signed the updated purchase and sale agreement and tendered the additional deposit.  The sellers declined what their attorney characterized as the buyer's "renewed offer and effort to purchase the property."  The buyer's new attorney then advised that the buyer was "ready, willing and able to perform in accordance with the terms of the Offer to Purchase since the Sellers are not going to execute the [purchase and sale agreement]."  The buyer filed suit on February 23, seeking specific performance of the sale of the property "in accordance with the terms of the OTP."  The buyer also moved for a memorandum of lis pendens on the property, which the judge allowed.  The sellers filed a special motion, pursuant to G. L. c. 184, § 15 (c), to dismiss the complaint and dissolve the memorandum of lis pendens, which the judge denied.  After discovery, the parties cross-moved for summary judgment.
            In a thoughtful and detailed memorandum of decision, the judge concluded that even though the OTP was not an agreement as to all material terms, it was a binding contract that imposed duties on the parties.  The judge further concluded that the OTP did not expire on January 19 because the sellers waived the "time is of the essence" clause by continuing to negotiate over the easement past that deadline, and that notwithstanding the sellers' attempt to end negotiations on January 29, they were still bound by the OTP and could "dissolve the contract" only after giving the buyer "definite notice" and offering him "reasonable time" to sign the updated purchase and sale agreement and pay the additional deposit.  The judge ruled that even though the buyer was not entitled to specific performance of the OTP alone, he was entitled to specific performance of the OTP "as amended by" the easement reservation in the draft purchase and sale agreement circulated by the sellers on January 27 -- if the buyer could prove at trial that he was "ready, willing, and able" to close on February 16 (the closing date set forth in the OTP).  The parties then jointly moved for entry of final judgment, stipulating that the buyer "possessed the ability to close on February 16, 2022" while preserving the sellers' right to challenge the judge's rulings in the summary judgment decision.  A final judgment entered ordering the sellers to convey the property to the buyer.
            Discussion.  1.  Special motion to dismiss.  The sellers contend that the judge should have allowed their special motion to dismiss pursuant to G. L. c. 184, § 15 (c), dismissed the complaint, and dissolved the lis pendens due to the omission of material facts from the complaint.  The propriety of that pretrial ruling, from which the sellers did not pursue an interlocutory appeal, see G. L. c. 184, § 15 (d); G. L. c. 231, § 118, has been rendered moot by the entry of final judgment.  Cf. Tavares v. Trial Court, 103 Mass. App. Ct. 780, 782-783 (2024).  Even if the issue were not moot, our review of the record persuades us that the judge did not abuse his discretion in denying the special motion to dismiss.  See DeLucia v. Kfoury, 93 Mass. App. Ct. 166, 170 (2018).
            2.  Enforceability of the OTP.  At the outset, the sellers argue that the judgment should be reversed because the OTP was not enforceable.[5]  "Ordinarily the question whether a contract has been made is one of fact.  If the evidence consists only of writings, or is uncontradicted, the question is for the court; otherwise it is for the jury."  David J. Tierney, Jr., Inc. v. T. Wellington Carpets, Inc., 8 Mass. App. Ct. 237, 239 (1979), quoting Bresky v. Rosenberg, 256 Mass. 66, 75 (1926).  See Nelsen v. Rebello, 26 Mass. App. Ct. 270, 272 (1988).  Here, the judge determined that the OTP was enforceable based on undisputed facts in the summary judgment record.  We review that determination de novo.  See Duff v. McKay, 89 Mass. App. Ct. 538, 544 (2016); Dennis v. Kaskel, 79 Mass. App. Ct. 736, 740-741 (2011).
            "It is axiomatic that to create an enforceable contract, there must be an agreement between the parties on the material terms of that contract, and the parties must have a present intention to be bound by that agreement."  Situation Mgt. Sys., Inc. v. Malouf, Inc., 430 Mass. 875, 878 (2000), citing McCarthy v. Tobin, 429 Mass. 84, 87 (1999), and Rosenfield v. United States Trust Co., 290 Mass. 210, 216 (1935).  An offer to purchase is a unique form of contract because it often expressly contemplates the execution of a more detailed purchase and sale agreement.  Indeed, "[i]t is a settled principle of contract law that '[a] promise made with an understood intention that it is not to be legally binding, but only expressive of a present intention, is not a contract'" (citation omitted).  Schwanbeck v. Federal-Mogul Corp., 412 Mass. 703, 706 (1992).  "If, however, the parties have agreed upon all material terms, it may be inferred that the purpose of a final document which the parties agree to execute is to serve as a polished memorandum of an already binding contract."  McCarthy, supra, quoting Goren v. Royal Invs. Inc., 25 Mass. App. Ct. 137, 140 (1987).  Accordingly, for an OTP to be enforceable, "all material terms" must be "agreed to and contained in" the OTP (quotation and citation omitted).  Fariello v. Zhao, 101 Mass. App. Ct. 566, 570 (2022).  By contrast, "[a] failure of the parties to agree on material terms may not merely be evidence of the intent of the parties to be bound only in the future, but may prevent any rights or obligations from arising on either side for lack of a completed contract."  Rosenfield, supra.
            Here, it is undisputed that, at the time the OTP was signed, the parties had not agreed on the existence, size, or duration of the maintenance easement requested by the sellers.  Both sides understood the easement to be, in the buyer's words, "a significant and material term to this transaction," and both sides intended to negotiate an easement in the purchase and sale agreement.[6]  Indeed, even before the wife signed the OTP, the buyer communicated to the buyer's broker that the lot was extremely tight and he was not sure how much space he could give -- "[p]robably just the 2.5" feet.  The buyer's broker responded that it was a matter "best handled by your attorney so it's binding."
            The judge correctly recognized that, because the OTP was not an agreement as to all material terms, it reflected "imperfect negotiations" under Blomendale v. Imbrescia, 25 Mass. App. Ct. 144, 147 (1987) -- as opposed to an agreement resolving "all significant economic issues" under Goren, 25 Mass. App. Ct. at 141.  The judge added, however, "that the OTP had become a Blomendale type of agreement by the time of its execution does not mean that, as of its execution, the OTP wasn't enforceable:  instead, once signed, the parties had several duties towards each other, at least and until they reached the deadline for executing a mutually agreeable [purchase and sale agreement]."  The judge did not cite any authority for this second proposition, and we do not find it supported by precedent.  A Blomendale type of agreement is not enforceable, in whole or in part.
            This court has repeatedly held that offers to purchase real estate that do not include all material terms are not binding contracts.  See Walsh v. Morrissey, 63 Mass. App. Ct. 916, 916-917 (2005) (offer signed by seller did not create binding contract because material terms "were left too vague" and parties had differing interpretations of certain provisions); Coldwell Banker/Hunneman v. Shostack, 62 Mass. App. Ct. 635, 639 (2004) (parties did not intend offer to be binding contract "because there was no agreement on a material term"); Germagian v. Berrini, 60 Mass. App. Ct. 456, 460 (2004) (because parties "intended the offer to be merely a preliminary step and the purchase and sale agreement to serve as the binding contract," offer "was not a valid, enforceable contract"); Nelsen, 26 Mass. App. Ct. at 273-274 (offer not binding contract where "there was no meeting of the minds" about payment of broker's commission).  See also Rosenfield, 290 Mass. at 217-218 (statements by defendant to plaintiffs that "deal was closed" and "[t]hat is all settled" did not give rise to binding contract given undisputed fact that parties had not agreed on material terms).
            In Goren, this court distinguished between preliminary agreements where "all significant economic issues [are] resolved," which can be binding; and agreements in which "significant items on the agenda of the transaction are still open," which are not binding.  Goren, 25 Mass. App. Ct. at 140-141.[7]  We discussed Rosenfield, which involved a jewelry store lease where the parties had not reached agreement on the design, specifications, and cost of a store front (among other terms), noting that the Supreme Judicial Court had viewed "the parties' preliminary written memorandum of several business points agreed upon as an agreement to reach an agreement, which imposed no obligation on them."  Goren, supra.  See Rosenfield, 290 Mass. at 216-217.  In Blomendale, this court held that because the OTP did not reflect an agreement as to certain warranties and other nonministerial matters raised by the buyer, the case fell into the Rosenfield "line of cases" and the parties were not bound.  Blomendale, 25 Mass. App. Ct. at 146-147.
            Because the OTP in this case did not mention any easement, much less reflect an agreement as to its terms, the OTP was not a binding contract, and it was error to conclude that it remained in force and imposed enforceable duties on the parties as they attempted to negotiate the easement and related issues in a purchase and sale agreement.  Rather, the parties' failure to agree on all material terms prevented "any rights or obligations from arising on either side for lack of a completed contract."  Rosenfield, 290 Mass. at 216.  See, e.g., Walsh, 63 Mass. App. Ct. at 917-918 (because OTP was not binding contract, no need to address separate claim that buyer "failed to execute a purchase and sale agreement by the contractual deadline"); Levenson v. L.M.I. Realty Corp., 31 Mass. App. Ct. 127, 131 (1991) (no duty to negotiate purchase and sale agreement in good faith where no contract existed).  To be sure, the OTP reflected that the parties had "agreed on certain fundamental terms," and as of at least January 14, there was "an implied understanding" they would seek to resolve the easement issue "by mutual agreement."  See Rosenfield, supra at 217.  However, that understanding was aspirational, not binding.  "An agreement to reach an agreement is a contradiction in terms and imposes no obligations on the parties thereto."  Id.  See Air Tech. Corp. v. General Elec. Co., 347 Mass. 613, 626 (1964).
            In the absence of an enforceable OTP, the sellers were free to terminate negotiations with the buyer whenever they wanted, subject to any equitable claim by the buyer for the return of his deposit.  They were not bound by the OTP's deadline or "time is of the essence" clause.  They had no duty to tell the buyer that they no longer "stood by" the OTP, or to give him notice or a reasonable time to act before moving on to a different buyer.  Nor was the buyer entitled to specific performance of the OTP, either on its own or as assertedly amended by the easement reservation in the purchase and sale agreement that the parties never executed.
            The judgment in favor of the buyer entered on July 18, 2023, is reversed, and judgment shall enter for the sellers on all claims.  A declaration in accordance with this opinion shall be entered.
So ordered.
 
footnotes

 
            [1] Of the Nantucket Sound Trust.
            [2] Katherine Anderson Young, trustee of the Nantucket Sound Trust.
            [3] For convenience, we refer to the sellers individually as the husband and the wife.
            [4] In this letter, the sellers authorized the escrow agent to "release and return any deposits previously paid [by] the buyer."  The buyer made no claim for the return of the deposit in his complaint.
            [5] In the alternative, the sellers contend that even if the OTP were enforceable, they did not waive the "time is of the essence" clause; and even if they did initially waive that clause, they reinstated it.  Because we conclude that the OTP was not enforceable, we do not reach those alternative grounds for reversal.
            [6] As the judge explained, even though the OTP that the buyer tendered to the sellers "contained all terms that initially were material to his anticipated purchase" of the property, it is undisputed that "he learned before paying the Deposit (and thereby getting both [sellers'] signatures on the OTP) that, as a condition of their agreement to sell the property, they needed a maintenance easement" -- and that once the buyer "learned of that issue, he considered it to be material to his purchase" of the property.
            [7] The court in Goren also recognized that the parties to a preliminary agreement that covers all material points may nevertheless provide that "they do not intend to be bound until the transaction is buttoned up by a more detailed and formal agreement," on the theory that there is "commercial utility to allowing persons to hug before they marry."  Goren, 25 Mass. App. Ct. at 142.